James E. ROTH, Westgate Investments, and Adams Sales, Inc., Appellants (Third-Party Plaintiffs),

v.

FIRST SECURITY BANK OF ROCK SPRINGS, WYOMING, a banking corporation, George Stahla and Keith West, Appellees (Third-Party Defendants).

No. 83–193.

Supreme Court of Wyoming.

July 18, 1984.

Warren R. Darrow of Riske & Edmonds, P.C., Cheyenne, for appellants.

Robert H. Johnson (argued), Rock Springs, for appellee First Sec. Bank and George Stahla.

Ford T. Bussart (argued) of Greenhalgh, Bussart, West & Rossetti, P.C., Rock Springs, for Keith West.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

Appellant, in a third-party action, sought to recover damages resulting from a claimed wrongful refusal by appellees to grant a construction loan. This appeal is from a summary judgment in favor of third-party defendants First Security Bank of Rock Springs, George Stahla, and Keith West. We will affirm.

In December of 1981 James Roth, Westgate Investments and Adams Sales, Inc. (referred to herein as Roth) began negotiations for a loan with First Security Bank of Rock Springs. From December of 1981 until July of 1982, Roth and George Stahla, the bank's loan officer, discussed the information, requirements, and documents necessary for a loan application by Roth.

On May 25, 1982, Roth hosted a dinner party for the purpose of providing information about the construction project to a representative of the Federal National Mortgage Association (FNMA). FNMA represented a possible source of end financing for this project which First Security required for approval of the loan. Various business leaders throughout the community and the state were invited to this dinner. Appellee Keith West was invited because of his position as mayor of Rock Springs. He was also a director of the First Security Bank of Rock Springs. During the course of the party, Mr. West made several favorable remarks concerning the status of the construction loan.

On July 9, 1982 the loan was formally denied. Roth was unable to meet his financial obligations and was sued by numerous contractors. In the suit by the contractors, Roth joined appellees and asserted a third-party complaint against them alleging wrongful denial of the loan. The action on the third-party complaint against appellees was severed from the main suit. Roth then filed an amended third-party complaint alleging also negligence and fraud. Appellees moved for summary judgment which was granted.

Appellant presents several questions for review:

"I. Whether there is a genuine issue of material fact as to appellants' reliance on the representations of appellee West.

"II. Whether there is a genuine issue of material fact as to whether or not appellants' reliance on the representations and assurances of appellees was reasonable.

"III. Whether there are genuine issues of material fact as to the alleged negli-

gent conduct and the alleged negligent misrepresentations of appellees.

"IV. Whether there are genuine issues of material fact as to appellants' allegations of fraud and deceit.

"V. Whether there are genuine issues of material [fact] as to appellee West's authority to bind appellee First Security in loan transactions."

▮▮▮ Our standard on review of summary judgment is that:

"When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record." *Reno Livestock Corporation v. Sun Oil Company* (Delaware), Wyo., 638 P.2d 147, 150 (1981). See also, *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334, 336 (1983).

A summary judgment should only be granted where it is clear that there are no issues of material facts involved and that an inquiry into the facts is unnecessary to clarify the application of law. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). A material fact is one which has legal significance. *Johnson v. Soulis*, supra. It is a fact which would establish a defense. *Wood v. Trenchard*, Wyo., 550 P.2d 490 (1976). After the movant establishes a prima facie case the burden of proof shifts to the opposing party who must show a genuine issue of material fact, *Gennings v. First Nat'l Bank of Thermopolis*, Wyo., 654 P.2d 154 (1982), or come forward with competent evidence of specific facts countering the facts presented by the movant. *Matter of Estate of Brosius*, Wyo., 683 P.2d 663 (1984). The burden is then on the nonmoving party to show specific facts as opposed to general allegations. 10 Wright & Miller, Federal Practice and Procedure: Civil § 2727, p. 538. The material presented must be admissible evidence at trial. Conclusory statements are not admissible. *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980). We give the party defending the motion the benefit of any reasonable doubt. If the evidence is subject to conflicting interpretations or if reasonable minds might differ, summary judgment is improper. *Weaver v. Blue Cross-Blue Shield of Wyoming*, Wyo., 609 P.2d 984 (1980).

Viewing the facts in a light most favorable to appellant Roth, we find that he entered into extensive negotiations with the bank for a loan in order to construct and develop a subdivision. During this time, Roth had numerous conversations with George Stahla, the bank's loan officer. He also spoke with other bank officials and with Keith West, a director of the bank. On May 25, 1982, Roth hosted a dinner party to which West had been invited. This party was given for the purpose of impressing an official from FNMA that the construction project was a good project to finance. At the cocktail party one of the guests asked Keith West about the status of the loan with First Security Bank. Mr. West answered, "Things look very good at this time." He was asked at dinner when Roth could start writing checks on the loan and responded, "We'll be ready before they will" (referring to FNMA). At the same dinner party, Roth approached Mr. West and asked him what the status of the loan was because, "[I]f I didn't have that loan I was in real trouble." Mr. West replied, "You don't have any * * * problems as long as I own the bank." Roth testified that he did not verify this statement with the loan officer at the bank, but

" * * * I immediately turned to Margaret Russell, who was five or six paces away and said, Margaret, order up the deed. How fast can you get it here?

She told me by the 10th of June and I told her get it on the way, stepped over to Mr. Dalyrmple and Mr. Patterson and told them, start turning the dirt.

"Q. That same night?

"A. Right then.

"Q. So, Dalyrmple and Mr. Patterson right after Keith West made that remark to you, you told them to start moving dirt?

"A. You bet.

"Q. You told Margaret Russell to start, to order up the deed?

"A. Right.

"Q. All this was on the strength of that remark?

"A. No, not at all. It was on the strength of past dealings, local banking community on the past dealings and inferences by Mr. Stahla that they could and would make the loan attending the FNMA approval, and that fact that Mr. West had told me that the procedure was that they, that the bank president basically checked with the loan officer involved and himself, and I had assurances from both ends of the banking organization as I knew it to be. It seemed to be—I had met all the guidelines and it had been my past experience that when the banking community told you something that's the way it was, and we went from there. So I can't say it was purely that at all."

Roth contends that the trial court erred in not finding a genuine issue of material fact regarding Roth's reliance on the bank's commitment to make the loan and in deciding that his reliance was unreasonable. Roth states that the course of negotiations, culminating with West's remark at the dinner party, induced him to incur substantial expenses and that appellee West and the bank should now be estopped from asserting the nonexistence of the construction loan.

 Equitable estoppel precludes a party who knows the truth from denying the assertion of any material fact with which he induced another to change his position where such other person is igno-

rant of the facts, had a right to rely upon the assertions, and suffers an injury. 28 Am.Jur.2d Estoppel and Waiver § 27. Estoppel arises only when a party, by acts, conduct, or acquiescence causes another to change his position. *Boise Cascade Corp. v. First Security Bank of Anaconda,* 183 Mont. 378, 600 P.2d 173 (1979). The elements consist of a lack of knowledge, reliance in good faith, and action or inaction which results in an injury. 28 Am.Jur.2d Estoppel and Waiver § 35. We have stated that two necessary components of equitable estoppel are (1) that the party lacked the knowledge of the facts and was without means to discover them; and (2) that he relied upon the actions of the parties sought to be charged and changed his position. *Wood v. Trenchard,* supra. The purpose of estoppel is to prevent an injury arising from actions or declarations which are acted upon in good faith in situations in which it would be inequitable to allow a retraction. *Jankovsky v. Halladay Motors,* Wyo., 482 P.2d 129 (1971). Equitable estoppel is not applicable unless the person relied and had a right to rely on the representation or conduct. The representation or conduct must induce and be the immediate or proximate cause of the act which is complained of. 31 C.J.S. Estoppel § 71(a). One must show that the change of position has not been performed or completed before the time of reliance. *Wood v. Trenchard,* supra.

Appellant contends that he relied upon the representations of the bank and the statements of its director, West, at the dinner party of May 25, 1982, in beginning the work necessary to subdivide. Uncontroverted evidence, however, most of which is found in Roth's deposition, shows that Roth entered into a majority of the contracts before the dinner party. Roth contracted with Tera West for construction management sometime in 1981. The contract with Withrow Construction was formally signed on June 1, 1982, but the work of stripping was started ten to fifteen days earlier, which would have been before the dinner party. The contract with L.D.B.

Drainlaying, Inc. was entered into May 17, 1982; the contract with Costin Engineering Company was entered into in the winter of 1981–1982; the contract with Johnson-Fermelia & Crank, Inc. for annexation and zoning was entered into in 1980 or 1981; the contract with THK & Associates for market analysis was entered into in 1981; and the contract with DeBernardi Brothers, Inc. for construction of curbs and gutters was entered into on April 13, 1982. Roth made these contracts and incurred these legal obligations and debts prior to the dinner party and prior to the alleged statement by Mr. West upon which he claims he relied. He could not rely upon a statement not yet made when he entered into these contracts and incurred these obligations, nor did he change his position or suffer damages in reliance upon such statement as is required to support equitable estoppel. His claim upon this basis, therefore, must fail.

 The only contract regarding the project entered into after the dinner party was with Ruble Landscaping. To the extent, however, that appellant incurred damages either prior or subsequent to the representation of Mr. West, he still must show that his reliance was reasonable. There can be no estoppel as a matter of law when the asserted reliance is not justifiable or reasonable under the circumstances of the case considered as a whole. *Matter of Simineo v. Kelling,* 199 Colo. 225, 607 P.2d 1289 (1980).

Roth testified to an extensive business education and background. He was a sophisticated and experienced business person with a wide background of making and obtaining loans. Except for the one statement made by West at the dinner party, every time he spoke with the bank loan officers or officials, they advised him that they needed more information, more financial statements or more details. Roth also testified that his impression of the corporate structure of the bank was that it was an extension of a banking system in Utah. Because of his extensive background in banking and business, Mr. Roth should

have known that he did not have a loan or even a commitment for a loan from the bank until he might be informed by the loan officer or bank official with whom he was dealing that the loan was approved. To the extent Roth relied upon the statement of West at the cocktail party and dinner, that reliance was unreasonable. West did not own the bank. He did not make loans. He was a member of the Board of Directors that makes policies and decisions as a board. Roth knew all of this. For equitable estoppel to operate, the reliance or the action must be reasonable. *FMA Financial Corp. v. Hansen Dairy, Inc.,* Utah, 617 P.2d 327 (1980); *Deacy v. College Life Ins. Co. of America,* 25 Wash. App. 419, 607 P.2d 1239 (1980). Appellant's claim of reliance was not reasonable as a matter of law, and there was no equitable estoppel.

 Appellant also contends that the trial court did not consider the negligence and fraudulent counts of the amended complaint. However, the fact that the trial court made no specific findings as to those issues does not indicate that they were overlooked. *Boise Cascade Corp. v. First Security Bank of Anaconda,* supra. In any event appellant has not shown the reliance necessary to establish a claim in fraud, *Berkeley Bank for Cooperatives v. Meibos,* Utah, 607 P.2d 798 (1980), nor the duty of care or breach of that duty necessary for negligence.

 We have resolved the issue of West's apparent authority in holding that appellant's reliance was unreasonable. After a prima facie case for summary judgment has been made, the appellant must come forward with competent evidence of specific facts countering those presented by appellee. This was not done. There were no genuine issues of material fact; the law was correctly applied. Therefore, the summary judgment granted to third-party defendants, appellees, is affirmed.