**Ben R. DOUD, debtor-in-possession, and Lakeway Development, a partnership, Appellants (Plaintiffs),**

v.

**FIRST INTERSTATE BANK OF GIL-LETTE and Homer A. Scott, Jr., Appellees (Defendants).**

**No. 88-268.**

Supreme Court of Wyoming.

March 1, 1989.

Georg Jensen of Law Offices of Georg Jensen, Cheyenne, for appellants.

Robert G. Berger of Lonabaugh and Riggs, Sheridan, for appellee First Interstate Bank of Gillette.

Kim D. Cannon of Burgess & Davis, Sheridan; and Myron L. Listrom and Ann L. Hoover of Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for appellee Homer A. Scott, Jr.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellants Ben R. Doud and Lakeway Development filed an action against appellee First Interstate Bank of Gillette alleging breach of a contract to lend money and against appellee Homer A. Scott, Jr. alleging tortious interference with contractual rights between appellants and First Interstate Bank. The district court granted summary judgments in favor of appellees.

We affirm.

Appellants present the following issues for our review:

1. Did the District Court err in granting summary judgment on the question of whether a contract existed between [appellants] and [appellee] First Interstate Bank—Gillette[?]

2. Did the District Court err in granting summary judgment on the question of whether [appellee] Scott tortiously interfered with a contractual relationship between [appellants] and [appellee] First Interstate Bank—Gillette or others[?]

Doud served on the board of directors of First Interstate Bank during the years 1983 and 1984, and he was a partner in Lakeway Development. During his term as a director of First Interstate Bank, Doud received a line of credit for the year 1983. He also received a line of credit for the year 1984, with that credit line to expire on January 17, 1985. In late 1985, Doud, who was no longer a director of the bank, sought financing for a business pur-

chase to be made through Lakeway Development. Consequently, Doud approached Ronald Ostermiller, who was then president of First Interstate Bank, regarding a loan or a line of credit. In January 1986, First Interstate Bank, through Ostermiller, informed Doud that the requested funds would not be advanced.

On December 31, 1987, Doud filed this action alleging, *inter alia,* breach of contract to loan money against First Interstate Bank and tortious interference with contract against Scott, a director of First Interstate Bank throughout all times material to this suit. Due to his involvement in bankruptcy proceedings and the involvement of Lakeway Development in the transaction for which Doud had sought financing, Doud was allowed to amend his complaint to designate himself, as debtor-in-possession of the claim against First Interstate Bank, and Lakeway Development as the proper party plaintiffs. Both appellees filed motions for summary judgment with supporting affidavits and discovery materials. After separate hearings the district court granted summary judgment for each appellee. With respect to the claim against First Interstate Bank, the district court found there was no enforceable contract, and thus there was no breach. The district court consequently found, with respect to the claim against Scott, that, since there was no contract, there could be no interference therewith.

## I.

◼ Appellants first contend that there are genuine issues of material fact regarding the existence of a contract precluding the entry of summary judgment on that issue. In reviewing the grant of summary judgment,

> we review the judgment in the same light as the district court, using the same information. A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of

action or defense asserted by the parties. Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts.

*Garner v. Hickman,* 709 P.2d 407, 410 (Wyo.1985) (citations omitted), quoted in *Albrecht v. Zwaanshoek Holding En Financiering, B.V.,* 762 P.2d 1174, 1176 (Wyo. 1988). A proper grant of summary judgment depends upon the dual findings that there are no genuine issues of material fact and that the prevailing party is entitled to judgment as a matter of law. *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School District Number One,* 763 P.2d 843 (Wyo.1988); *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1,* 763 P.2d 1255 (Wyo.1988).

Appellants, in their complaint and amended complaint, alleged that in November 1985 Doud approached First Interstate Bank, through Ostermiller, regarding Doud's need for a $90,000 line of credit; that Doud was advised that such a draw was "not any problem"; that Doud and First Interstate Bank agreed to conclude the loan immediately after the first of the new year; and that First Interstate Bank thereafter breached such agreement by refusing to advance the agreed upon funds. In support of its motion for summary judgment, however, First Interstate Bank produced bank records and affidavits from bank personnel which indicated that no loan application had been filed with the bank with respect to the alleged agreement; that Doud had applied for and received lines of credit for the years 1983 and 1984 after submission of written applications to and approval by the board of directors; that no subsequent lines of credit had been approved; that in late 1985 or early 1986 Doud verbally inquired about a line of credit on behalf of the Lakeway Development partnership; that First Interstate Bank did not agree to loan appellants money at that time; that no loan amount, interest rate, repayment schedule, or acceptable collateral was agreed upon during

this oral discussion; and that in January 1986 Ostermiller became aware of Doud's delinquency on an obligation due another bank whereupon he advised Doud that a new loan would not be approved.

First Interstate Bank, therefore, established a prima facie case for summary judgment, and the burden shifted to appellants to come forth with competent evidence of specific facts, rather than general allegations, to counter the facts presented by the movant. *Roth v. First Security Bank of Rock Springs, Wyoming,* 684 P.2d 93 (Wyo.1984); W.R.C.P. 56(e). Appellants, accordingly, submitted the affidavit of Doud in opposition to First Interstate Bank's motion for summary judgment. In this affidavit Doud stated that, in prior dealings with the bank, he had never submitted written loan requests or applications before the loans had been approved. He stated that in past transactions his loan requests were granted verbally and later reduced to writing at board meetings. Doud stated that the alleged loan commitment at issue was made in the same manner as these prior transactions and that he always had been able to rely upon such course of business. Doud further stated in this affidavit that the terms of the alleged loan agreement had not been specifically set out because they were known to both himself and Ostermiller pursuant to their positions with the bank and past course of dealing. Doud additionally stated that it was well known to himself and "all other directors" that directors' loans were granted at the bank's base rate and were evidenced by demand notes. Doud maintained in this affidavit that Ostermiller had committed verbally to extend a line of credit to him.

Applying our standards of review of summary judgment, as set out above, we agree with the district court that there are no genuine issues of material fact and that as a matter of law no contract, agreement, or commitment was ever formed obligating First Interstate Bank to lend money to appellants. We acknowledge that a bank may sustain liability as a result of failing to lend money in accordance with a contractual agreement to do so. 10 Am.Jur.2d,

*Banks* § 683 (1963). Reviewing the record from the vantage point most favorable to appellants, however, reveals, at most, an agreement to agree in the future. While a party to such an agreement may perceive that a binding obligation is created by this type of agreement, the courts are incapable of ordering enforcement, as they cannot supply the terms of the agreement for the parties. *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 334 (Wyo.1986). Doud admitted in his affidavit that the terms of the alleged agreement were not established.

Doud claims that his previous dealings under similar circumstances with First Interstate Bank gave him an expectation that the loan at issue in this case would also be forthcoming, but this claim simply is not borne out by his affidavit. The circumstances were not similar. Doud was no longer a bank director when the disputed loan inquiry was made, and, even assuming that Doud expected to be treated as he had been in the past for purposes of acquiring loans, he did not follow the procedure utilized when he actually was a director of First Interstate Bank. The factual assertions by Doud, considered in a light most favorable to him, fail to establish that a loan commitment was made in late 1985. Thus, although certain factual disputes are presented by the materials submitted by the parties, they are not material to the question of the existence of a contract. In addition, if we accept Doud's factual allegations concerning his past dealings with First Interstate Bank, we can only conclude that none of the loans made to him were made pursuant to a contractual obligation to make those loans. The fact that Doud received loans on the earlier occasions does not support a conclusion that he was entitled to a loan in 1986.

Our decision is supported by *Roth,* 684 P.2d at 95–97. In that case, the plaintiff alleged that a bank and its officers had wrongfully denied him a loan and that the bank was estopped from asserting the nonexistence of the loan because of certain informal remarks made by a director of the bank to the plaintiff to the effect that the

plaintiff had nothing to worry about concerning his loan request and that he could soon start writing checks on the loan. The plaintiff in *Roth* indicated that he had relied upon inferences made by a loan officer and past dealings with the local banking community in assuming he would obtain the loan. In affirming summary judgment for the defendants, we stated that the plaintiff, with an extensive background in banking and business, should have known that he had neither a loan nor a commitment for a loan from the bank "until he might be informed by the loan officer or bank official with whom he was dealing that the loan was approved." *Id.* at 97. In the instant case, Doud similarly demonstrated his complete understanding and knowledge concerning the handling of bank transactions generally, and certainly those with First Interstate Bank. Under these circumstances, Doud cannot sustain a claim that he was somehow passively led to believe that a loan commitment had been made when he, by his own admission, had not followed any application procedure, not even that informal one which he received the benefit of as long as he was serving as a bank director.

Appellants' reliance on *Landes Construction Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir.1987), is misplaced. In that case, which was described by the court as "little more than a swearing contest," *id.* at 1371, the plaintiff's assertion of an oral contract to lend money was clearly supported by undisputed facts that the plaintiff and a representative of the defendant bank had several documented meetings to discuss the terms of the loan, that the plaintiff had actually purchased the golf course property for which the loan was negotiated, that the bank had advanced some $3 million which had been applied by the plaintiff to the purchase of the golf course property consistent with the terms of the alleged oral contract, and that the dealings between the plaintiff and the defendant were the same as prior dealings they had conducted for the purchase

of a golf course on another occasion. *Id.* at 1368–69. Appellants' claim of an oral contract may have all the flaws of the oral contract at issue in the *Landes Construction Co., Inc.* decision, but it has none of the features which the Ninth Circuit relied upon in affirming the jury verdict finding the oral contract had been formed. The summary judgment in favor of First Interstate Bank is affirmed.

## II.

We next address appellants' contention that the summary judgment in favor of Scott was erroneous.

Appellants alleged tortious interference by Scott with a valid contractual relationship between appellants and First Interstate Bank, resulting in appellants' inability to prepay an installment purchase contract because they were not able to obtain a loan from First Interstate Bank. To establish a tortious interference with a contract, a plaintiff must prove: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) intentional and improper interference inducing or causing a breach; and (4) resulting damages. *First Wyoming Bank, Casper v. Mudge*, 748 P.2d 713 (Wyo.1988). Relying upon our determination that no contract existed, we hold that, as a matter of law, summary judgment was properly entered on appellants' claim against Scott for tortious interference with a contract because no contract was proved.[1]

In an attempt to avoid affirmance premised on the lack of a contract, appellants additionally contend that the lack of a contract need not be fatal as to a claim against Scott for interference with their business expectancy, a claim not raised below. They cite *Martin v. Wing*, 667 P.2d 1159, 1161–63 (Wyo.1983), wherein we recognized that individuals are entitled to be free from intentional interference with the right to conduct negotiations which have a reasonable probability of resulting in a contract

---

1. We also agree with the district court that appellants failed to present any evidence indicating any intentional or improper action on the part of Scott with respect to appellants' alleged contract rights.

and that it is not required that the existence of a valid contract be alleged in such an action. While it is tempting to merely conclude, viewing the record in the light most favorable to appellants, that they presented no facts indicating any wrongful interference by Scott with prospective contractual relations, we focus instead upon the fact that appellants simply did not raise this cause of action in the proceedings below. No such cause of action was addressed in the district court's judgment, and, if appellants were genuinely interested in pursuing such a theory, they made no post-judgment effort to call the district court's attention to its failure to dispose of such a claim. We do not consider issues raised for the first time on appeal except under unusual circumstances which are not present in this case. *Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.,* 750 P.2d 1324 (Wyo.1988). The summary judgment in favor of Scott is affirmed.

AFFIRMED.