**Forrest W. PROVENCE and Shirley J. Provence, Appellants (Plaintiffs),**

v.

**HILLTOP NATIONAL BANK, Appellee (Defendant).**

No. 89–82.

Supreme Court of Wyoming.

Oct. 10, 1989.

Donald L. Painter, Casper, for appellants.

Richard E. Day and Richard L. Williams of Williams, Porter, Day & Neville, P.C. and Manuel A. Lojo, Casper, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and ROONEY, J., Retired.

URBIGKIT, Justice.

The Central Wyoming Livestock Exchange, Inc. of Glenrock, Wyoming (Livestock Exchange), a corporation in which Forrest W. and Shirley J. Provence (Provences) were major stockholders and personal secured guarantors by mortgage of their home, failed to repay the Hilltop National Bank (Hilltop Bank) loan. The Hilltop Bank assigned the collateral to the Small Business Administration (SBA) in utilization of the SBA 90% loan guarantee, following which the SBA called the loan and foreclosed including the individual Provence collateral which had been pledged for the business loan. Milton L. Keim (Keim) had, subsequent to the initial loan origination and closing, also executed a payment guarantee on the loan. After the foreclosure, the Provences sued the Hilltop Bank for monetary damages claiming negligence and breach of agreement for loss of

their home when they were not given a mortgage release in exchange for the Keim guarantee which was provided.[1] The district court granted summary judgment to the Hilltop Bank from which the Provences appeal.

We affirm.

## ISSUES

The Provences frame the issue presented to this court by asking "[w]hether the District Court erred in granting summary judgment to Defendant on Plaintiffs' claim of estoppel." *A question of law?*

The Hilltop Bank frames the issue presented to this court by asking whether "the Trial Court [was] correct in its ruling that there was no agreement between Appellants Provence and Appellee Hilltop National Bank to release the Appellants' residence mortgage solely upon the receipt of the personal guaranty of Mr. Keim?" *A question of fact?*

The Hilltop Bank more inclusively claims the issue it presents must be answered first because the estoppel claim and supporting argument advanced by the Provences presupposes an agreement exists. The argument suggests that if there was no agreement between the Provences and the Hilltop Bank which called for the release of the Provence collateral upon the receipt of Keim's personal guarantee, then the Provences' theory of estoppel is without supportable foundation. The Hilltop Bank asserts it breached no agreement, had no duty (or right) to release the Provence collateral and is not subject to liability for violated estoppel since the right of decision rests with the guarantor, the United States agency—the SBA.

## FACTS

The transaction is a business loan for a livestock enterprise in Glenrock, Wyoming with a 90% guarantee by the SBA and cross-collateralized by guarantees and security which, at default date, included the following:

A. Collateral

1. First mortgage on commercial property (44 acres-Glenrock and improvements).

2. First mortgage on Provence residence (4955 Skyline Road–Casper).

3. Third mortgage on Steffensmeier residence (1400 Sunlight Drive–Casper).

4. First perfected Financing Statement/Security Agreement.

B. Co-borrowers or guarantors.

Forrest W. Provence and wife—co-borrowers

Marvin Steffensmeier and wife—co-borrowers

Milton Keim—personal guaranty.

Originally, the Provences and Marvin and Carolyn Steffensmeier (Steffensmeiers) owned equal amounts of stock in the Livestock Exchange in their negotiation in behalf of that business with the Hilltop Bank as originating lender to obtain an SBA guaranteed loan of $650,000. In order to complete the loan agreement (Proposal # 1), the Hilltop Bank, in conjunction with the co-borrowers, successfully approached the SBA to obtain the 90% guarantee which, within prudent lending criteria, made the loan possible for the Hilltop Bank. In return for the SBA guarantee, the Provences and the Steffensmeiers executed the negotiated loan promissory note of $550,000 and gave mortgages encumbering their homes. In accord with normal business practices for the SBA loan arrangement, the note and security were executed in favor of the Hilltop Bank. There was in addition the basic three-party agreement encompassing the SBA guarantee which is contained within the SBA loan authorization and sets the terms of borrowing and conditions for assignment to the SBA upon payment default and lender request for the agency to honor its 90% guaranteed amount.

---

1. By virtue of SBA accession to ownership of their home by foreclosure, the Provences claim they were damaged by the Hilltop Bank in the sum of $150,000 plus accruing rent in arrangement for their continued occupancy of the house by a monthly lease.

Within a month following loan closing, Keim additionally became involved in the venture. He notified the Hilltop Bank in a letter acknowledged by the Provences and the Steffensmeiers that he had agreed to purchase the Provences' stock in the Livestock Exchange and asked the Hilltop Bank to release the collateral pledged by the Provences. In exchange, he would provide "a first mortgage on a commercial office building, a second mortgage on [his] personal residence, and [he] and [his] wife's personal guaranties of all indebtedness at the bank". One day later and as a gesture of "good faith" before leaving on a vacation, Keim signed a personal guaranty to the Hilltop Bank for the Livestock Exchange's indebtedness. Apparently, a down payment was made on his investment in the business which was to be $100,000.

Recognizing the SBA would have to approve any modification to the agreement if the modified loan was to continue to be guaranteed, the Hilltop Bank wrote to the SBA to review and approve the Keim–Provence–Steffensmeier proposal. On March 22, 1985, the SBA approved this proposal (Proposal # 2) which called for the release of the security provided by the Provences upon Keim assuming the Provences' obligations and giving mortgages on his residence and business property as collateral for the indebtedness. The exchange, substitution and transfer was scheduled to take place on March 27, 1985, but before that closing date, Keim advised that the terms of his involvement had to be changed since his wife would sign neither the guarantee nor the home mortgage. Consequently, he could not provide the collateral necessary to complete Proposal # 2.[2]

On March 28th, Keim, Provence, and Steffensmeier advised the SBA and the Hilltop Bank that Proposal # 2 would be modified. In this new proposal (Proposal # 3), there would be a new mix of obligations, collateral and stock ownership. Under Proposal # 3, the three men would each own one-third of the stock. This proposal was not accepted by either the SBA or the Hilltop Bank. The only legally enforceable agreement at this point was the original loan · agreement (Proposal # 1) found in the SBA loan authorization, which continued to include the additional security of Keim's personal guarantee. Only too soon thereafter, the loan went into default and all collateral was assigned by the Hilltop Bank to the SBA. The SBA withdrew approval of the noncompleted modification and foreclosed on the collateral used to secure the loan, including the Provences' home.

After their home had been foreclosed by the SBA, the Provences brought suit against the Hilltop Bank claiming it negligently failed to release or obtain the release of their collateral, breached an agreement to obtain the release of that collateral and breached a duty to obtain the release of that collateral. The Hilltop Bank's success by summary judgment dismissal of the complaint presents the case for appellate review. *Springs Industries, Inc. v. Kris Knit, Inc.*, 880 F.2d 1129 (9th Cir. 1989).

### ANALYSIS

In consideration of the divergent phraseology of the issues by the litigants, this court must first determine whether the appeal presents an argument about the existence of an issue of fact, *Davenport v. Epperly*, 744 P.2d 1110 (Wyo.1987); *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986) (stage six issue of fact review), or whether with a determined factual record, a legal issue which was presented was properly decided by the trial tribunal, *Cordova*, 719 P.2d 625 (stage five). For the issue of fact review, summary judgment is proper if the party awarded the judgment met the burden of proof to demonstrate there was no genuine issue of material fact. Summary judgment as a process is also proper when the parties agree as to the material facts, since without an issue of material fact, the decision would properly be submitted to the court for decision as a matter of law. Material facts establish or refute the elements

---

**2.** In retrospect, Mrs. Keim was the only smart person in the transaction in refusing to sign the guarantee and mortgage which would have included an encumbrance on her *own* home.

needed in a cause of action brought by the plaintiff or in the defense raised by the defendant. *Cordova,* 719 P.2d at 634–40; *Garner v. Hickman,* 709 P.2d 407, 410 (Wyo.1985) *(accord Dudley v. East Ridge Development Co.,* 694 P.2d 113 (Wyo. 1985)). Material facts are the basis for and are therefore different from legal conclusions, such as estoppel. This court reviews de novo the grant of summary judgment. *Davenport,* 744 P.2d 1110; *Taylor v. List,* 880 F.2d 1040 (9th Cir.1989). "The motion for summary judgment should be sustained in the absence of a real and material fact issue considering movant's burden, respondent's right to the benefit of all favorable inferences and any reasonable doubt, with credibility questions to be resolved by trial" if then with facts undisputed, movant is entitled to judgment as a matter of law. *Cordova,* 719 P.2d at 640. *See Davenport,* 744 P.2d 1110.

The district court by decision letter and summary judgment order determined as a matter of law within the undisputed facts there was no legally enforceable agreement between the Provences and the Hilltop Bank. Because the Provences indicate they "are in entire agreement with the facts as set forth in Defendant's Memorandum," the district court was properly presented with only an issue of law for decision. *Kennedy v. Kennedy,* 761 P.2d 995, 998 (Wyo.1988). *See also Wyoming Sawmills, Inc. v. Morris,* 756 P.2d 774, 775 (Wyo.1988); *Matter of Bagshaw,* 753 P.2d 1044, 1045 (Wyo.1988); and *Miles v. CEC Homes, Inc.,* 753 P.2d 1021, 1023 (Wyo. 1988).

The argument made by the Provences in contention that their home should have been freed from the SBA foreclosure is more sophisticated than contention that a factual issue existed. The syllogism they pursued is that they arranged to get additional collateral added which should have been sufficient to require the release of the mortgage on their home. They argue that the Hilltop Bank

is estopped to assert or permit through assignment of collateral the Small Business Administration to assert liability against Appellants' real estate, their home.

The Doctrine of Quasi Estoppel [should be] used by the Court to prevent an unconscionable change of position such as this. The elements for application of this doctrine are: (1) Whether the party against whom the estoppel is sought has gained from a change of position; (2) Whether the change in position is unconscionable; and (3) Whether the first position was based upon the same information. *National Crude, Inc., v. Ruhl,* 600 P.2d, 716 (Wyo., 1979). Those requirements are clearly satisfied when (1) The bank or its assignee has been able to charge additional parties or property with liability for collection of a debt; (2) The change is unconscionable because the bank could collect in full from Mr. Keim based upon his net worth and because Appellants have lost their home; and (3) Appellee's information was based upon the same information throughout.

The difficulty they face with this posture is two-fold. First, the argument contends by premise that the Hilltop Bank became obligated with only partial performance even though the SBA did not concur. Secondly, the Hilltop Bank is charged with responsibility for what the SBA might have done in foreclosure liquidation under the security documents and that Keim had a primary liability before resort to the original guarantee security that they had provided at the time of the loan origination.[3]

The essential elements of promissory estoppel are well established: (1) a clear and definite agreement; (2) proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and (3) a finding that the equities support enforcement of the agreement. * * * The burden of proving estoppel is on the party asserting it and strict proof of all elements is required. *National Bank of Waterloo*

---

3. Keim contributed about $60,000 in foreclosure settlement to cover his most inopportune pre-va-

cation executed guarantee.

*v. Moeller,* 434 N.W.2d 887, 889 (Iowa 1989). The required "clear and definite agreement" was not present here.

Factually emplaced, the Provences argue as a matter of law even when they were unable to complete a modification and collateral substitution arrangement as initially proposed, that the additional security which was obtained by the volunteered Keim guarantee was sufficient to affect an estoppel so that their house mortgage should have been released. Euphemistically, this might be characterized as the half of a loaf-full remedy inquiry. Factually, lacking a completed separate modification agreement between the Hilltop Bank and the Provences for the Hilltop Bank to release the Provence collateral upon the personal guarantee by Keim, duty to release the home mortgage did not accrue as a matter of law. *Dudley,* 694 P.2d 113. Nothing presented in this record disclaims the primary decision for modification of loan conditions rested with big brother, the SBA, because of its 90% loan guarantee. It was that guarantee which made the original loan possible and, as such, that agency with the heavy default risk had primary control of the modification and foreclosure processes. Admittedly, the SBA got a benefit not included in the original loan authorization—the Keim guarantee—but it did not get what it had agreed to accept for release of the home mortgage; namely, substitute real estate security from Keim and his wife and the guarantee of Mrs. Keim. The benefit received by the SBA did not require the Hilltop Bank to breach its own guarantee with a federal agency by releasing the original mortgage security without required authorization.

We would first concur with the district court that collateral estoppel cannot be asserted against the originating bank for what the SBA would or would not do to maintain its guarantee. Secondly, the additional security obtained by the Keim guarantee was not sufficient to effectuate compliance with the negotiated requirement for release of the previously pledged collateral. In retrospect, Mrs. Keim saved her home and the Provences lost their home when the proposed business enterprise and covering loan went sour. The Provences signed and Mrs. Keim did not. The Hilltop Bank did not control either decision. We cannot find a premise presented where estoppel as a remedy as a matter of law could properly be emplaced. *National Crude, Inc. v. Ruhl,* 600 P.2d 716, 720 (Wyo.1979); *Wood v. Trenchard,* 550 P.2d 490, 493 (Wyo. 1976); *Pickett v. Associates Discount Corp. of Wyoming,* 435 P.2d 445, 447 (Wyo.1967).

The originating lender cannot be fiscally responsible for continued enforcement of the original loan terms by the federal agency after failure of the Provences' effort to consummate a security release agreement for their mortgaged home with approval of the SBA. This attack on summary judgment fails where the district court correctly discerned that no triable issue of disputed material fact existed and with those uncontroverted facts established, then entered decision against the participating obligors on their executed agreements as a matter of law. *Allen v. Slim Pickens Enterprises,* 777 P.2d 79 (Wyo.1989); *Northwinds of Wyoming, Inc. v. Phillips Petroleum Co.,* 779 P.2d 753 (Wyo.1989) (Nos. 89–33 and 89–34, decided 9/8/89); *Dudley,* 694 P.2d 113.

The judgment* of the district court is affirmed.