Kenneth Wesley DAVIS, Appellant
(Plaintiff),

v.

Virginia M. DAVIS; Russell A. Davis and
Carol May Davis, husband and wife;
and Ramsey E. Davis, Appellees (Defendants).

No. 92–167.

Supreme Court of Wyoming.

June 17, 1993.

Roger Cowan, Harris, Morton & Cowan, P.C., Evanston, for appellant.

Dennis W. Lancaster, Phillips, Lancaster & Thomas, P.C., Evanston, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The primary issue to be resolved in this case is whether the statute of frauds forecloses Kenneth Wesley Davis (KWD) from a trial on his claim of an oral contract with his mother, Virginia M. Davis (VMD), to convey the family ranch to him. Embraced within this primary issue are collateral issues concerning whether KWD can avoid the statute of frauds by relying upon the doctrine of substantial part performance or the doctrine of promissory estoppel. An additional issue is present relating to whether the enforcement of his rights under any theory is foreclosed by the applicable statute of limitations. We hold that the evidence presented by KWD in opposition to the motion for summary judgment was not sufficient to satisfy the doctrine of substantial part performance or the doctrine of promissory estoppel and that any oral contract as to which he might have been able to avoid the statute of frauds should have been performed, if at all, more than ten years before he filed his action. The summary judgment entered by the trial court in favor of VMD and other members of the Davis family is affirmed.

KWD, as appellant, states the issues to be:

I. Whether there were material facts in dispute, whereby the district court erred in granting summary judgment and whether the district court's findings of fact are contrary to the evidence presented?

II. Whether upon the evidence most favorable to appellant, summary judgment was proper upon the defenses of:

    A. Statute of Limitations?
    B. Statute of Frauds?

VMD, Russell A. Davis and Carol May Davis, husband and wife, and Ramsey E. Davis, as appellees, state this single issue:

I. Whether the district court's order of dismissal and award of summary judgment to appellees, and related findings are supported by the facts, the record, and the law.

The basic factual background in this case is not in dispute. VMD was married to Kenneth Davis and, when he died in February of 1963, she became the owner in fee simple of their ranch in Uinta County. VMD had three sons, KWD, Russell A. Davis, who is married to Carol May Davis, and Ramsey E. Davis. On January 31, 1991, VMD conveyed the ranch by warranty deed to Russell A. Davis, his wife, Carol May Davis, and Ramsey E. Davis.

Prior to that time, KWD had occupied, used, and operated the ranch property from approximately February, 1963 to sometime in late 1990. KWD testified in his deposition that he had paid the remaining $12,000 on a mortgage on the ranch after his father's death in return for the promise of VMD that the ranch would be given to him. KWD admits there was no written agreement executed by VMD, as evidenced by the following excerpt of his testimony:

Q: You paid the $12,000 that paid for it?

A: I paid her until she said the mortgage was paid.

Q: Did you have any written agreements with your mother that if you made that payment that was your ground?

A: I had her word on several occasions.

Q: Listen to the question, Mr. Davis. Did you have any written agreement with your mother that if you made these payments that you've referred to that that would be your ground?

A: No.

Q: Did you have any written lease agreement or any other written agreement with your mother?

A: No.

VMD, on the other hand, stated that she had no recollection of any agreement of any nature with KWD regarding the ranch. She testified:

Q: Did you enter into any kind of an agreement with your son Wesley about what he was to do with the place?

A: It might have been on some points, I don't remember, but not entirely.

Q: What points would there have been that you had an agreement?

A: I suppose it was with sheep shearing or something. I can't remember. I can't remember.

Q: Did you have any agreement with your son Wesley regarding who was going to pay the expenses?

A: I don't remember.

Q: Did you have any agreement with your son Wesley about what you would do with any money that the ranch made?

A: I can't recall.

Q: Did you have any agreement with your son Wesley that he was to give you any money from the ranch?

A: I can't recall.

Later in her deposition, when she was asked if something happened to make her decide to give the property to her other two sons, she answered:

A: No, I don't—it just seemed like there had been enough years, Wes had had it for quite a number of years to use and I figured the others should have a chance at it too. That's all I could think of. No one did anything to make me think about it I know.

While this testimony discloses a difference as to the existence of any agreement with respect to the ranch, the undisputed fact is that there was no writing subscribed by VMD that reflected any agreement to convey the ranch to KWD.

In his complaint, KWD set forth six theories relating to his claim to recover for breach of an agreement to convey the ranch to him. These included: (1) promissory estoppel; (2) breach of promise; (3) resulting trust and lien; (4) quantum meruit; (5) unjust enrichment; and (6) tortious interference with a gift. VMD answered his complaint with a general denial of those allegations, and she submitted a counterclaim. In her counterclaim, VMD alleged: (1) breach of contract for an accounting and conversion based upon KWD's wrong-ful use and conversion of proceeds from the property; (2) wrongful sale and conversion of livestock, personal property, and mineral interest in the subject property; and (3) waste and loss of value resulting from KWD's misuse of the property. The district court granted appellees' Motion to Dismiss or in the Alternative Motion for Summary Judgment and entered an Order of Dismissal upon these motions. KWD appeals from the district court's Order of Dismissal.

■ In its decision letter, the trial court reported that it had considered the memorandum filed by each of the parties along with supporting affidavits; heard oral arguments; and granted the motion to publish the depositions of KWD and VMD. A Wyo.R.Civ.P. 12(b)(6) motion to dismiss is converted to a Wyo.R.Civ.P. 56 motion for summary judgment if materials outside the pleadings are considered. *Stalkup v. State Dep't of Envtl. Quality*, 838 P.2d 705 (Wyo.1992); *Cranston v. Weston County Weed and Pest Bd.*, 826 P.2d 251 (Wyo. 1992). We, therefore, apply the standard for review for summary judgments. That standard recently was summarized in this way:

When reviewing the propriety of a summary judgment, this court examines the record from the vantage point most favorable to the party opposing summary judgment to determine whether there exists a genuine issue of material fact to preclude disposition of the case as a matter of law. A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element to the cause of action or defense asserted by the parties. If upon such review no genuine issue of material fact is found to exist, we will uphold a summary judgment under any legal theory properly supported by the record.

*Miller v. Campbell County and Bd. County Comm'rs, et al.*, 854 P.2d 71, 75 (Wyo. 1993) (citing *Abell v. Dewey*, 847 P.2d 36, 38–39 (Wyo.1993). *See Brown v. Avery*, 850 P.2d 612 (Wyo.1993).

We have considered the record in the light most favorable to KWD in determining whether any genuine issue of material fact can be found that would preclude the resolution of this case as a matter of law.

The legal rule that KWD encountered in this case is the statute of frauds, since KWD conceded that his contractual claim is one based upon an agreement to convey land and that the agreement was not reduced to writing. The statute of frauds, as it relates to real property, is codified at Wyo.Stat. § 1–23–105(a)(v) (1988), which reads:

> (a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:
>
> \* \* \* \* \* \*
>
> (v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year \* \* \*.

For more than thirty years, the legislative policy that justifies the statute of frauds in relation to real property has been recognized by this court. In support of that legislative policy we said:

> The tendency has been to restrict rather than enlarge and multiply the cases of exceptions to the statute, and the courts should not be tempted to turn aside from its plain provisions merely because of the hardship of the particular case.

*Crosby v. Strahan's Estate*, 78 Wyo. 302, 324 P.2d 492, 496 (1958).

Unless this case fits within one of the recognized exceptions to the statute of frauds, summary judgment as a matter of law was properly entered.

■ KWD argues that there are recognized exceptions, which he contends are applicable in this instance, relying upon *Allen v. Allen*, 550 P.2d 1137 (Wyo.1976). We said in that case:

> If performance on one side of a contract is fully executed, the contract is not within the statute of frauds. *Hageman & Pond v. Clark*, 1951, 69 Wyo. 154, 172, 238 P.2d 919, 926.

Even if it should be considered that there has not been full performance by the Plaintiff because he has yet to convey his paper interest in the \* \* \* [property] to the defendants, his substantial part performance is enough to remove the contract from the statute of frauds. *Crosby v. Strahan's Estate*, 1958, 78 Wyo. 302, 324 P.2d 492.

*Allen*, 550 P.2d at 1143. *See also Richardson v. Schaub*, 796 P.2d 1304 (Wyo.1990). This doctrine does permit an avoidance of a defense of the statute of frauds. In order for the exception to apply, however, there must not only be part performance, but that part performance must be substantial. *Allen*.

■ Prior to *Allen*, although phrased in categorical terms, we recognized that there were certain equitable exceptions to the statute of frauds. It has, however, been our policy to restrict, rather than expand, exceptions to the plain provisions of the statute, even if hardship will result. *Crosby*. If the mere failure to perform an oral contract were sufficient to remove it from the reach of the statute of frauds, the statute would be rendered vain and nugatory. *Crosby; Turner v. Floyd C. Reno & Sons, Inc.*, 696 P.2d 76 (Wyo.1985), *appeal after remand*, 769 P.2d 364 (1989). The breach of an oral contract does not suffice to demonstrate fraud, which would justify a failure to follow the statute of frauds in order to prevent fraud.

In *Allen*, we decided we should not include within the statute of frauds an agreement by a father to a son to convey a certain piece of land solely to assist the son in obtaining a bank loan, after which the land was to be reconveyed. A "sale" in the natural sense of the word was not implicated, and we did not extend the statute to this transaction. *Allen*. The partial performance exception to remove the parol agreement from the statute of frauds was invoked in *Allen* because we concluded that to do otherwise would cause the father to lose a substantial interest in his ranch, which was never contemplated by the parties, and would be an unfair and inequitable result. *Allen*. We examined carefully

the relations of the parties to that parol agreement, the nature of the parol agreement, and the relative benefit and detriment derived by the parties.

The exception of partial performance received its most thorough treatment in *Butler v. McGee*, 373 P.2d 595, 597 (Wyo.1962), where (citing *Johnson v. Maki*, 45 Wyo. 113, 16 P.2d 46 (1932)) the general rule was stated in this way:

> Possession taken pursuant to an oral contract, coupled with payment of the whole or a part of the purchase price, will remove the case from the operation of the statute of frauds and permit the contract, if just and certain, to be specifically performed.

*See also Crosby*, 324 P.2d at 499.

KWD urges that the substantial part performance exception to the statute of frauds should be invoked in this case. He contends that substantial part performance has been demonstrated by evidence that he paid the mortgage on the ranch, worked the ranch for twenty-eight years and expended approximately $400,000 on improvements. There are, however, other factors that must be considered before this doctrine will be applied to avoid the statute of frauds.

▪ The equitable considerations in connection with the partial performance exception to the statute of frauds require that the agreement sought to be enforced be just and certain. In making that determination, we have considered whether payment was received within the time agreed. *Butler*, 373 P.2d at 597 (concluding that payment after seven months, when six weeks was agreed, is not "certain"). In addition, we have held that "payment," in the context of an oral contract to convey land must be unconditional. *Butler.* KWD contends he did make the mortgage payments in the amount of $12,000 to his mother. Nothing indicates any agreement as to when that payment was to be made and, when asked about it, KWD said he made payments on the mortgage to VMD "until she said it was paid." There is no evidence payment by KWD was conditional or unconditional.

▪ In connection with a claim of partial performance, the party seeking to invoke the exception must prove "beyond the possibility of findings to the contrary" the elements of possession and part or full payment. *Butler*, 373 P.2d at 597. As used in this context, "possession" requires that it be taken within the knowledge and consent of the owner. *Butler.* Furthermore, possession must be taken at, or immediately after, the time the contract was made and must be visible, notorious, exclusive, continuous, and maintained. *Butler* (citing *Mecum v. Metz*, 30 Wyo. 495, 222 P. 574, *reh'g denied*, 32 Wyo. 79, 229 P. 1105 (1924)). The possession to justify this exception must be referable solely to the parol agreement to convey land sought to be enforced, and it cannot be referable to the parol agreement for conveyance in part and some other agreement in part. *Butler.*

▪ The performance of services alone does not suffice to remove a parol contract from the statute of frauds except in exceptional cases in which the value of the services cannot be measured in money. *Crosby.* As the court in *Andrews v. Aikens*, 44 Idaho 797, 260 P. 423, 425 (1927), stated, "[i]n practically all the cases where specific performance was decreed, the contracts called for the performance of duties of a filial and intimate personal nature, the value of which could not be estimated." This record demonstrates that KWD never took possession, although he lived on the ranch for twenty-eight years, and worked it for the same amount of time. The value of his services could be estimated and, therefore, his claim of substantial part performance by virtue of his services fails. As to the claimed exception of substantial partial performance, summary judgment was proper upon the defense of the statute of frauds.

▪ KWD also claims that the doctrine of promissory estoppel should be applied in this case. Promissory estoppel can be relied upon to take an oral contract outside of the statute of frauds. We have explained that the purpose of estoppel is "to prevent an injury arising from actions or declara-

tions which have been acted on in good faith and which would be inequitable to permit a party to retract." *Jankovsky v. Halladay Motors,* 482 P.2d 129, 132 (Wyo. 1971). We have identified three elements that must be demonstrated in order to invoke the doctrine of promissory estoppel:

> (1) a clear and definite agreement; (2) proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and (3) a finding that the equities support the enforcement of the agreement.

*Michie v. Bd. of Trustees of Carbon County Sch. Dist. No. 1,* 847 P.2d 1006, 1009 (Wyo.1993); *Inter–Mountain Threading, Inc. v. Baker Hughes Tubular Serv., Inc.,* 812 P.2d 555, 559 (Wyo.1991) (citing *Provence v. Hilltop Nat'l Bank,* 780 P.2d 990 (Wyo.1989)).

The doctrines of promissory estoppel and equitable estoppel are closely related and, as we impliedly recognized in *Baker Hughes,* they often have been invoked together and interchangeably, without the benefit of clear distinction. *Baker Hughes. See also Roth v. First Sec. Bank of Rock Springs, Wyo.,* 684 P.2d 93 (Wyo.1984). Reasonable reliance is an element common to both of these doctrines. *Baker Hughes.* Thus, we find that equitable estoppel cases are cited in promissory estoppel cases with respect to this common element. In Wyoming, these doctrines most often have been presented in the context of preliminary negotiations for commercial agreements.

██ In considering the doctrine of promissory estoppel as it applies to KWD's agreement, we first of all consider whether any promises are "clear and unambiguous in their terms." *Baker Hughes,* 812 P.2d at 559. Oral statements from which promissory estoppel is claimed must be more than precatory or mere statements of hope or "agreements to agree." *Baker Hughes,* 812 P.2d at 559. As we explained in *Baker Hughes,* with respect to this first element, " 'the dual emphasis on clarity and inducement parallels the Restatement (Second) definition of an agreement for purposes of promissory estoppel as "[a] promise which the promisor should reasonably expect to induce action * * * on the part of the promisee." ' " *Baker Hughes,* 812 P.2d at 559 (quoting *Nat'l Bank of Waterloo v. Moeller,* 434 N.W.2d 887 (Iowa 1989)).

The nature of the transaction is significant in determining whether the parol contract is sufficiently definite. "Considering what is at stake * * * it is important that the relationship and commitment of the parties, each to the other, be carefully expressed in a formally executed written document." *Baker Hughes,* 812 P.2d at 560. Off-hand or conversational remarks like "You don't have any * * * problems as long as I own the bank" have routinely been found not to be sufficiently definite. *Roth,* 684 P.2d at 95; see also *Doud v. First Interstate Bank of Gillette,* 769 P.2d 927, 928 (Wyo.1989) (holding that a statement advising that a proposed line of credit was " 'not any problem' " was insufficiently clear and definite). If the agreement appears clear and definite, the party still must act to his detriment in reasonable reliance on the agreement.

██ In *Provence,* we explained that detriment in reasonable reliance is closely tied to the existence of a clear and definite agreement. A reasonable person does not rely to his or her detriment on an oral agreement unless it is sufficiently clear and definite as to induce him or her to act. *Provence.* "There can be no estoppel as a matter of law when the asserted reliance is not justifiable or reasonable under the circumstances of the case considered as a whole." *Roth,* 684 P.2d at 97 (citing *Matter of Simineo v. Kelling,* 199 Colo. 225, 607 P.2d 1289 (1980)). The representation that induces the reliance also must be the immediate or proximate cause of the act in reliance. *Roth.* The knowledge and sophistication of the relying party is to be considered in determining reasonableness (*Roth*) and consistent with the Restatement (Second) of Contracts § 90, we also consider the reasonable foreseeability by the promisor that the promisee would rely on the statement or representation. *Baker Hughes.*

██ The third element of promissory estoppel requires a consideration of wheth-

er the equities support the enforcement of the agreement. The doctrine of promissory "estoppel is governed by equitable considerations" *State Farm Mut. Auto. Ins. Co. v. Petsch*, 261 F.2d 331, 335 (10th Cir. 1958) (applying Wyoming law), and the determination as to whether the equities support enforcement under the doctrine as a matter of law. *Baker Hughes* (citing *U.S. Oil Co. v. Midwest Auto Care Serv., Inc.*, 150 Wis.2d 80, 440 N.W.2d 825 (1989)). The doctrine of promissory estoppel can only be invoked when it is necessary to avoid injustice. This requirement necessarily involves a policy question that embraces an element of discretion. *Baker Hughes* (citing *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267 (1965)).

■ The limited ability of courts to enforce indefinite agreements is a prominent factor leading to a reluctance to enforce oral agreements. Even when the parties perceive the oral agreement as a binding obligation, the courts may be incapable of requiring its enforcement because definite terms that the parties themselves did not agree upon cannot be supplied by the court. *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328 (Wyo.1986) (citing *Adobe Oil & Gas Corp. v. Getter Trucking, Inc.*, 676 P.2d 560 (Wyo.1984)).

■ Promissory estoppel serves to put the party relying thereon back in the position that party would have held had the matters that were represented by the other party come to pass. *Gay Johnson's Wyoming Automotive Serv. Co., Inc. v. City of Cheyenne*, 369 P.2d 863 (Wyo.1962). The doctrine cannot be "invoked as an instrument of gain or profit but should be confined to saving harmless or making whole the party in whose favor it arises." *Gay Johnson's*, 369 P.2d at 863.

■ Like the doctrine of substantial part performance, a valid claim of promissory estoppel can defeat the defense asserted under the statute of frauds. *Remilong v. Crolla*, 576 P.2d 461 (Wyo.1978). *See also B & W Glass v. Weather Shield Mfg.*, 829 P.2d 809 (Wyo.1992) (creating an exception within the U.C.C.). This is true because, in order to further the policies behind the statute of frauds of avoiding fraud and injustice, it sometimes becomes necessary to enforce oral contracts. *Remilong*. The party seeking to have the oral contract enforced must demonstrate a change of position "substantially for the worse" and the incurrence of "unjust and unconscionable injury and loss" before the invocation of estoppel can be successful. *Crosby*, 324 P.2d at 497 (holding, even though we spoke of estoppel in pais specifically, the rule generally applied to estoppel). In *Crosby*, we cited with approval *In re Bennett*, 115 Minn. 342, 132 N.W. 309, 311 (1911), in which the court said that change in position must be "of such character and to such an extent that the interposing of the defense of the statute would be a fraud."

■ Application of the rules recognized in our cases to KWD's claim he was entitled to a trial on his theories of breach of contract demonstrates that his evidence did not satisfy the doctrine of promissory estoppel. KWD remained on the property for twenty-eight years, while managing it and operating it, and was not required to make any sort of land payments after approximately 1969 or 1970. While KWD claims that he expended $400,000 of his own money relying on the belief that he would receive the property, he cannot show that he lacked knowledge of the facts. KWD lived there, and he knew that the property was VMD's to do with as she pleased. Over the years, VMD did just that and, in the course of various dealings over the years, she maintained title to the property despite repeated requests by KWD for her to sell it to him. VMD treated the property as her own, conveyed it, and encumbered it as she chose. KWD knew of the transactions.

We hold that KWD did not demonstrate facts that would permit the application of an equitable exception to the statute of frauds found under either the doctrine of part performance or the doctrine of promissory estoppel. There is no genuine issue as to any material fact in this regard, and the summary judgment entered by the trial court was appropriate.

The application of the statute of limitations becomes a critical factor in the analysis of KWD's contentions. In attempting to satisfy the requirement, found in both the doctrine of promissory estoppel and the doctrine of part performance, that a clear and definite agreement existed, KWD clearly premised his rights upon an agreement to convey the land to him when the mortgage was paid. In applying the statute of limitations, the trial court invoked the ten-year statute as applicable to this case, relying on Wyo.Stat. § 1–3–103 (1988), which provides:

> An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten (10) years after the cause of action accrues.

KWD contends that the statute of limitations did not begin to run until he knew of or had reason to know of the existence of a cause of action, relying upon *Mills v. Garlow*, 768 P.2d 554 (Wyo.1989), for this position. We recognize this rule of law, but KWD's argument that he had no cause of action until 1991 is not supported by the record.

KWD contends that as early as 1963, after his father's death, VMD promised to him the entire ranch. While KWD was unable to provide a specific date for that conveyance, he said that it was to be accomplished when the mortgage was paid off. That event occurred far more than ten years prior to the institution of KWD's action. Furthermore, in the early 1970s, VMD conveyed part of the ranch away, which would constitute injury to any claimed right of KWD and the breach would have occurred at that time. In 1980, more property was conveyed by VMD. Again, KWD did nothing. KWD obviously incurred injury at those times because VMD no longer could keep any promise to convey the ranch to him.

After reviewing the record in the light most favorable to KWD, and assuming that there may have been an oral agreement to convey the family ranch to him, we are satisfied that the agreement was breached upon numerous occasions prior to 1991.

Any one of those events would have caused the statute of limitations to begin to run. The result is that KWD failed to bring an action to enforce his claim within ten years as required by the statute of limitations, and his claim is time-barred. Any oral contract which KWD relies upon in attempting to avoid the statute of frauds should have been performed much earlier than ten years before the filing of his action. The summary judgment entered by the trial court in favor of VMD and other members of the Davis family against KWD is affirmed.