In the Matter of the ESTATE OF Erwin W. SCHLUETER, Deceased.

Anna M. Schlueter Glatt, Alfred W. Schlueter, and Amanda Schlueter, Appellants (Petitioners),

v.

Chris Bowers, Personal Representative of the Estate of Erwin W. Schlueter, Appellee (Respondent).

No. 98–311.

Supreme Court of Wyoming.

Jan. 11, 2000.

Representing Appellant: Anthony F. Ross of Ross, Ross & Santini, L.L.C., Cheyenne, Wyoming.

Representing Appellee: Catherine R. Rogers and John B. Rogers of Rogers and Associates, Cheyenne, Wyoming. Argument by Ms. Rogers.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

GOLDEN, Justice.

Anna M. Schlueter Glatt, Alfred W. Schlueter, and Amanda Schlueter (collectively Glatt), cousins of the decedent, Erwin W. Schlueter (Schlueter), appeal from a grant of summary judgment in favor of Appellee, Chris Bowers (Bowers). The district court found that unrefuted evidence established the testamentary capacity of the decedent. Holding that no material issues of fact exist and Bowers was entitled to partial judgment as a matter of law, we affirm.

## ISSUES

Glatt presents this statement of the issue:

1. That there exists [sic] genuine issues of material fact which would preclude summary judgment.

Bowers phrases the issue as:

A. Whether there are any genuine issues of material fact regarding Mr. Schlueter's testamentary capacity on May 4, 1995 which would preclude summary judgment?

## FACTS

The primary question in this dispute is whether Schlueter had testamentary capacity when he executed his last will and testament leaving a large portion of his estate to Bowers. Schlueter and his wife, Frieda, lived in Cheyenne, as did Bowers, whom they had known since he was a toddler, and of whom they were reportedly very fond. In July of 1994, at the age of 82, Schlueter executed a General Durable Power of Attorney and a Durable Power of Attorney for Health Care. Both documents named Frieda as his attorney in fact, and designated Bowers, who was

then 17 years old, as successor in case Frieda was unable to serve.

On May 4, 1995, Schlueter executed a will leaving his entire estate to Frieda, with Bowers to receive a large portion of the estate if Frieda did not survive Schlueter. The will also designated Frieda as personal representative and named Bowers as alternate. At the time Schlueter executed the will, Bowers was living in Missouri. Shortly thereafter, Bowers moved in with the Schlueters to care for them and help manage their affairs. Frieda died on September 15, 1996.

Schlueter died on March 28, 1997. The district court admitted his will to probate and appointed Bowers as personal representative. Glatt filed a petition contesting the will and Bowers' appointment, claiming that Schlueter lacked testamentary capacity and Bowers exercised undue influence over Schlueter. Bowers moved for summary judgment on both testamentary capacity and undue influence. On the issue of testamentary capacity, the district court issued its Order Granting Respondent's Motion for Summary Judgment, in which it said:

> THE COURT FINDS that the circumstances set forth in Rule 54(b) of the Wyoming Rules of Civil Procedure have been met, to-wit: multiple claims are involved in this action and there exists no just reason to delay the entry of a final judgment as to the issue of testamentary capacity[.]

Glatt timely appealed.

## DISCUSSION

### Standard of Review

■ Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Century Ready–Mix v. Campbell County*, 816 P.2d 795, 798 (Wyo.1991). A material fact is any fact that, if proved, would establish or refute an essential element of a claim or defense asserted by a party. *Id.* at 799 (citing *Doud v. First Interstate Bank of Gillette*, 769 P.2d 927, 928 (Wyo.1989)). When reviewing a grant of summary judgment, we will consider the record in the light most favorable to the party opposing the

motion, and give that party the benefit of all favorable inferences we may fairly draw from the record. *Id.* If we can uphold summary judgment on the record presented, under any proper legal theory, we will do so. *Id.* at 799 (citing *Reeves v. Boatman*, 769 P.2d 917, [920] (Wyo.1989)).

■ Glatt contends that Schlueter lacked testamentary capacity when he executed his last will. The standard of testamentary capacity this Court has adopted is:

> "Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them. He must have sufficient mind and memory to understand all of these facts, and to comprehend these elements in their relation to each other, and a charge in negative form, that capacity is lacking if testator is not able to know all of these facts, is erroneous, since he lacks capacity if he is unable to understand any one of them. He must be able to appreciate the relation of these factors to one another, and to recollect the decision which he has formed."

*Matter of Estate of Roosa,* 753 P.2d 1028, 1032 (Wyo.1988) (quoting *In re Estate of Morton,* Wyo., 428 P.2d 725, 729 (1967)). An individual with testamentary capacity is able to comprehend:

> (1) [T]he extent and nature of the estate, (2) the identity of the beneficiaries and their relationship, whether by blood or circumstances, to the testator, and (3) the nature of the testamentary act, that it is a disposition of property to take effect at death.

*Id.* This Court recognizes a presumption of testamentary capacity which attaches to a duly executed and attested will, unless the testator's incompetency has been established by proof or admission. *Id.*

*Errors in the Will*

Glatt first argues that errors in the will demonstrate that Schlueter did not have testamentary capacity. Specifically, the will identifies Schlueter's mother as his mother-in-law, and his mother-in-law as his mother. In addition, Schlueter's signature is identified as that of a "testatrix," denoting a female signatory. Bowers responds that the inconsistencies in the will will have no bearing on our standard for testamentary capacity prescribed in *Roosa,* and are merely clerical errors having no relation to Schlueter's testamentary capacity. We agree.

■ Bowers maintains the errors occurred because Schlueter and his wife executed reciprocal wills prepared with computer word processing. Uncontroverted affidavits from Schlueter's attorney and the secretary who typed the wills confirm that Mrs. Schlueter's will was done first, then the names were switched to make Schlueter's will, but the secretary forgot to switch the names of the mother and mother-in-law, or change "testatrix" to "testator." We further note that Schlueter's mother and his mother-in-law both used the last name, Schlueter, making the error even more understandable. The errors in Schlueter's will demonstrate clerical carelessness rather than incapacity, and cannot overcome our presumption of testamentary capacity. *See Matter of Estate of Croft,* 713 P.2d 782 (Wyo.1986) (affidavits from testator's attorney and attorney's secretary showed that inconsistency in testator's will resulted from a clerical error).

*Medical and Mental Condition*

■ Glatt next contends that Schlueter's medical and mental condition raises triable issues of fact regarding his testamentary capacity. Schlueter's physician testified in his deposition that Schlueter suffered from senile dementia, but declined to offer an opinion as to whether he lacked testamentary capacity. This Court has never before had occasion to decide whether a diagnosis of senile dementia is incompatible with a finding of testamentary capacity; we join several other states in holding that it is not. *Matter of Estate of Oliver,* 23 Kan.App.2d 510, 934 P.2d 144, 149 (1997); *Lucero v. Lucero,* 118 N.M. 636, 884 P.2d 527, 530–31 (1994); *Matter of Estate of Buchanan,* 245 A.D.2d 642, 665 N.Y.S.2d 980, 983 (N.Y.App.Div. 1997)("Mere proof that the decedent suffered from old age, physical infirmity and chronic, progressive senile dementia when the will was executed is not necessarily inconsistent with testamentary capacity and does not alone preclude a finding thereof, as the appropriate inquiry is whether the decedent was lucid and rational at the time the will was made." (internal citations omitted)); *Street v. Waddell,* 3 S.W.3d 504, 505–06 (Tenn.App.1999).

■ In addition to senile dementia, Glatt points to anecdotal evidence describing Schlueter's behavior. Some of Schlueter's relatives supplied affidavits reporting that in September, 1992, Schlueter did not recognize a car he had previously owned, had forgotten how to drive, could not decide for himself what to eat, and once urinated in his clothes. Other relatives reported that in January, 1995, Schlueter could not carry on a simple conversation or operate a candy dispenser that a two-year-old mastered with ease. On April 3, 1995, a home health care nurse noted in her report that Schlueter's short-term memory was poor.

Although the affidavits upon which Glatt relies paint a picture of diminished mental abilities, they shed no light on the real question before us: did Schlueter have testamentary capacity, as described in *Roosa,* on the day he executed his will. The only affidavits in the record that do address that question are those of Schlueter's attorney, the witnesses to his will, and the notary who witnessed their signatures. Each surviving individual who was present when Schlueter signed his will has provided an affidavit saying Schlueter was alert and oriented, and had testamentary capacity, using the prescribed language from *Roosa.*

*Implied Admission of Incompetency*

■ In a final attack on Schlueter's testamentary capacity, Glatt contends that Schlueter impliedly admitted incapacity by granting a General Durable Power of Attorney and a Durable Power of Attorney for Health Care before executing his will. Glatt argues that because these documents became effective immediately, rather than upon some

future disability, Schlueter tacitly admitted he was incompetent at the time he signed them. That argument runs afoul of Wyo. Stat. Ann. § 3–5–213 (LEXIS 1999), which provides that one who executes a power of attorney is presumed to have capacity to do so. We fail to see how a presumption of capacity and an admission of incapacity could arise from the same act. While a prior admission of incompetency is sufficient to overcome our presumption of testamentary capacity, we hold that granting a power of attorney does not constitute such an admission. *See also Fincher v. Baker*, 709 So.2d 1, 5 (Ala.Civ.App.1996), *affirmed in part, reversed in part on other grounds*, 709 So.2d 7 (1997) (testator who granted a power of attorney in July, 1978, was found to have had testamentary capacity in January, 1982); *In re Estate of Kessler*, 95 Wash.App. 358, 977 P.2d 591, 601 (1999) (testator who granted a power of attorney in April, 1993, was found to have had testamentary capacity in March, 1996).

Because Glatt has presented no evidence or argument directly bearing upon our standard for testamentary capacity, we affirm the district court's grant of partial summary judgment on that issue. Glatt also presents arguments regarding Bowers' alleged undue influence over Schlueter. That issue, however, is not properly before us because the district court limited its findings and order to the issue of testamentary capacity.