2009 WY 85

**In the Matter of the Cancellation Deed from Lewen Bill STREET, a/k/a Lewen B. Street, Jr., Appellant (Plaintiff),**

v.

**William Clark STREET; Jacqueline Louise Menke; and Jonathan Ray Menke, Appellees (Defendants).**

No. S–08–0107.

Supreme Court of Wyoming.

July 1, 2009.

Representing Appellant: Patrick Dixon of Chapin & Dixon, LLP, Casper, Wyoming.

Representing Appellees: Cameron S. Walker of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] After Lewen Bill Street (appellant) became extremely ill and hospitalized, he entered into a number of transactions conveying items of personal and real property to his children. When the appellant recovered, he claimed that he had no memory of the conveyances. He brought a declaratory judgment action to have the transactions set aside, asserting that they were invalid as he lacked the requisite mental capacity. The district court upheld the validity of the transactions, finding that the appellant was mentally competent at the time the documents were executed. We will affirm the district court's decision.

## ISSUES

[¶ 2] The overriding issue in this appeal is whether the district court's finding that the appellant possessed the necessary mental capacity to make the conveyances was clearly erroneous or contrary to law. The appellant breaks that issue down into four sub-issues:

1. Did the district court improperly apply a presumption of validity to the notarized deed?

2. Did the district court fail to apply the correct standard for the determination of capacity to execute a deed?

3. Did the district court apply the proper burden of proof?

4. Were the district court's factual findings clearly erroneous?

## FACTS

[¶ 3] The appellant has four children: William C. Street, Clyde R. Street, Debra Herrera, and Jackie Menke. During most of his life, the appellant lived on Casper Mountain and owned real and personal property there. He owned a one-acre lot on which his house sat (Tract 3). He also owned a barn and land across the street on a similar parcel (Barn Parcel). Tract 3 and the Barn Parcel were part of the Wa·Wa Subdivision. The appellant owned a six-eighths interest in a pipeline that distributed water to the Wa Wa Subdivision (Wa Wa Pipeline). Immediately adjacent to these properties he owned an 18½ acre tract (18½ acre tract). Finally, he owned a one-quarter undivided interest in a contiguous 460 acre tract of undeveloped land on Casper Mountain (Homestead).

[¶ 4] On November 21, 2004, the appellant became gravely ill and was admitted to the Wyoming Medical Center with what appeared to be pneumonia. He was then transferred to the intensive care unit (ICU) with symptoms of congestive heart failure. His condition improved and on December 6, 2004, he was transferred to the transitional care unit, with anticipation that he might go home within one or two weeks. The next day, the appellant conveyed Tract 3 to himself and Debra as joint tenants.

[¶ 5]   On December 11, 2004, the appellant's condition deteriorated and he once again was admitted to the ICU with a diagnosis of respiratory failure secondary to severe congestive heart failure secondary to severe aortic regurgitation.   That evening the family was told that the appellant's heart condition was inoperable, that he was terminal, and that he had a 5% chance of survival that night.   The appellant did survive the night and returned to the medical floor where he remained until December 21, 2004, when he was transferred to the Central Wyoming Hospice for end of life care.   The day before the appellant was transferred to the hospice, he conveyed the Barn Parcel to Debra.

[¶ 6]   According to nurses' notes and other medical records the appellant's health continued to improve while at the hospice.   On December 27, 2004, the appellant signed a bill of sale conveying his interest in the Wa Wa Pipeline to William.   On January 7, 2005, the appellant conveyed the 18½ acre tract to William and Debra.   On that same day, the appellant conveyed his one-quarter undivided interest in the Homestead to William, Jackie and Clyde, one-third each.   The appellant was discharged from the hospice on March 18, 2005.

[¶ 7]   On March 9, 2006, the appellant filed a petition for declaratory judgment naming three of his children, William, Clyde, and Jackie as defendants.[1]   In his petition, the appellant requested that title to the Homestead property be quieted in his favor and the transfer to William, Clyde and Jackie be set aside.   As grounds for his petition, the appellant alleged that he was not competent to execute the documents transferring the property.   On January 9, 2008, the appellant moved to amend the petition, adding a claim that the bill of sale transferring the Wa Wa Pipeline to William was invalid, again on the ground that he lacked mental capacity to make the conveyance.   That motion to amend was granted by oral ruling.

[¶ 8]   A bench trial commenced on January 14, 2008, and continued for three days.

On February 6, 2008, the district court issued an oral ruling finding the appellant failed to show "by a preponderance of the evidence that at the time the deeds in question and the bill of sale in question were executed, that [the appellant] lacked capacity to understand in accordance with the requirements under Wyoming law."   A judgment in favor of the appellees was entered on February 20, 2008, affirming the validity of the deed to the Homestead property and the bill of sale for the Wa Wa Pipeline.   This appeal timely followed.

## STANDARD OF REVIEW

[¶ 9]   After a bench trial, we review the trial court's factual findings under a clearly erroneous standard and its legal conclusions de novo.   *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003) (citing *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo.1999)).   We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law.   *Deroche v. R.L. Manning Co.*, 737 P.2d 332, 336 (Wyo.1987).   Although the factual findings of a trial court are not entitled to the limited review afforded a jury verdict, the findings are presumptively correct.   *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo. 2005).

This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence.   *Forshee, et ux. v. Delaney, et ux.*, 2005 WY 103, ¶ 6, 118 P.3d 445, 448 (Wyo.2005).   Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses.   We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it.   *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004) (quoting *Life Care Centers of America, Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003)).   Findings

---

1.   Although the appellant claims he does not remember entering into the transactions conveying property to Debra, he affirmed those conveyances and she was not a named party to the lawsuit

may not be set aside because we would have reached a different result. *Harber,* ¶ 7, 97 P.3d at 60 (citing *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,* 2003 WY 139, ¶ 6, 78 P.3d 679, 681 (Wyo.2003)). A finding will only be set aside if, although there is evidence to support it, this Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Mullinnix LLC v. HKB Royalty Trust,* 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006).

*Snelling v. Roman,* 2007 WY 49, ¶¶ 7–8, 154 P.3d 341, 345 (Wyo.2007).

## DISCUSSION

[¶ 10] The prevailing question in this appeal is whether the appellant had the requisite mental capacity to execute the documents conveying his property. The burden to show a lack of mental capacity is on the party challenging the validity of the deed. *Strom v. Felton,* 76 Wyo. 370, 302 P.2d 917, 922 (1956). The standard for determining mental capacity is well established:

> Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them. He must have sufficient mind and memory to understand all of these facts, and to comprehend these elements in their relation to each other, and a charge, in negative form, that capacity is lacking if testator is not able to know all of these facts, is erroneous, since he lacks capacity if he is unable to understand any one of them. He must be able to appreciate the relations of these factors to one another, and to recollect the decision which he has formed.

*In re Estate of Morton,* 428 P.2d 725, 729 (Wyo.1967). "In judging a grantor's capacity to execute a deed, the point of time to be considered is the time of the execution of the deed." 23 Am.Jur.2d *Deeds* § 23 (2002); *see also In re Estate of Roosa,* 753 P.2d 1028,

1032 (Wyo.1988); *In re Estate of Schlueter,* 994 P.2d 937, 939 (Wyo.2000). Mental incapacity is not always permanent and a person may have lucid moments or intervals when that person possesses the necessary capacity to convey property. *See Schlueter,* 994 P.2d at 940.

The Wyoming court adheres to the general principle that "Mere weakness of body or mind, or of both, do not constitute what the law regards as mental incompetency sufficient to render a contract voidable. * * * A condition which may be described by a physician as senile dementia may not be insanity in a legal sense." *Kaleb v. Modern Woodmen of America,* 51 Wyo. 116, 64 P.2d 605, 607 [ (1937) ].

*Cundick v. Broadbent,* 383 F.2d 157, 160 (10th Cir.1967), *cert. denied* 390 U.S. 948, 88 S.Ct. 1037, 19 L.Ed.2d 1139 (1968).

### 1. Did the district court improperly apply a presumption of validity to the notarized deed?

[¶ 11] We have held that a presumption of testamentary capacity attaches to a properly executed will. *Schlueter,* 994 P.2d at 939; *Roosa,* 753 P.2d at 1032; *Morton,* 428 P.2d at 729. However, we have not recognized the same presumption of validity in an *inter vivos* conveyance, such as the deeds and bill of sale here. The appellant contends that the district court improperly applied such a presumption, quoting the following language from the district court's oral ruling:

> The Court and the parties have also noted that "Courts recognize a presumption of testamentary capacity, which attaches to a duly executed and attested will, unless the testator's incompetency has been established by proof or admission." That's *In Re Estate of Schlueter,* .... found at 994 P.2d 937 at 939.

[¶ 12] The appellees respond that the district court did not apply a presumption of validity. Rather, the appellees contend that when the district court made the above statement, it was merely reciting the Stipulated Conclusions of Law submitted by the parties, which is why the statement begins "The Court and the parties also noted

that. . . ." The appellees insist that nothing in the record suggests that the district court premised its decision upon a presumption that the deed was valid.

[¶ 13] Our review of the district court's holding supports the appellees' position. The district court clearly articulated the proper legal standard:

The standard that this Court must apply in this matter is noted by the Supreme Court in, *In re: Estate of Morton.* And it's noted that, "One who seeks to challenge the validity of a deed or will has the burden of proof to show by a preponderance of the evidence the lack of testamentary capacity."

. . . .

A competent grantor is essential for a proper deed. When it can be established that a grantor lacked legal capacity to make a conveyance, his purported deed may be avoided or set aside or regarded as null and of no consequence in law.

One who lacks testamentary capacity also lacks the necessary capacity to execute a deed. A deed may be deemed invalid and canceled in equity on the ground of mental incapacity if the grantor is shown to be entirely without an understanding of the deed at the time of the execution.

Further, nothing in the language of the district court's holding indicates that it applied a presumption of validity when determining whether the appellant had the requisite mental capacity to execute the deed.

[I]n looking at the medical records and in considering the standards that this Court must apply—and I've also reviewed *In re: Estate of Short,* found at 785 P.2d 1167; as well as the *Estate of Waters* at 629 P.2d 470 [ (Wyo.1981) ]; and *In re: Estate and Guardianship of Andrews,* found at 39 P.3d 1021 [ (Wyo.2002) ].

The Court concludes that there has not been a showing by a preponderance of the evidence that at the time the deeds in question and the bill of sale in question were executed, that [the appellant] lacked capacity to understand in accordance with the requirements under Wyoming law.

. . . .

That is how I find the evidence to be in this case. And for those reasons, I would find that a judgment in favor of the defendants should be entered in this matter; that the plaintiff has failed to establish by a preponderance of evidence that at the time the deeds and the bill of sale in question were executed that he was incompetent.

We find that the district court did not apply a presumption of validity when reviewing and upholding the transactions at issues here.

**2. Did the district court fail to apply the correct standard for the determination of capacity to execute a deed?**

[¶ 14] The appellant asserts that when the district court determined that he possessed mental capacity, it "overlooked the requirement that the grantor must have the ability to recollect the decisions which he has made." Essentially, the appellant argues that for a deed to be valid, the grantor must have the present ability to recollect the decisions he made when he executed the deeds. In support, the appellant quotes and emphasizes the following from *In re Estate of Morton:*

He must have sufficient mind and **memory** to understand all of these facts, and to comprehend these elements in their relation to each other, and a charge, in negative form, that capacity is lacking if testator is not able to know all of these facts, is erroneous, since he lacks capacity if he is unable to understand any one of them. He must be able to appreciate the relations of these factors to one another, **and to recollect the decision which he has formed.**

*Morton,* 428 P.2d at 729 (emphasis added). The appellant claims to have limited recollection of many of the events that occurred while he was hospitalized and during his stay at the hospice and "absolutely no memory of any of the conveyances made during his illness." As such, the appellant insists that the conveyances were invalid.

[¶ 15] The appellant's argument is simply incorrect. As we noted above, when determining a grantor's mental capacity, the point of time to be considered is the time of execu-

tion of the deed. *See supra* ¶ 10. We found no authority to support the proposition that post-execution memory is a requirement to a determination of mental capacity. The appellee aptly points out that such a rule would create legal chaos, as the nursing homes of this country are full of individuals who have no recollection of wills or deeds they signed.

### 3. Did the district court apply the proper burden of proof?

[¶ 16] In this issue, the appellant urges this Court to address a question that was not presented to the district court— that is whether the conveyances should be set aside because the appellant was subjected to undue influence. The appellant raises this argument on appeal because unlike the analysis of mental capacity, when challenging a conveyance on grounds of undue influence, the burden of proof may shift to the recipient of the property to prove that the transaction was valid.

> Once the person who is seeking to void the transaction on the basis of undue influence has established that a confidential relationship existed between the grantor and the grantee, the burden of proof shifts to the recipient of the property to prove that the transaction was fair and conducted in good faith.

*Krafczik v. Morris*, 2009 WY 53, ¶ 20, 206 P.3d 372, 377 (Wyo.2009), quoting *Marchant v. Cook*, 967 P.2d 551, 557 (Wyo.1998); *In re Estate of Short*, 785 P.2d 1167, 1170 (Wyo. 1990). The appellant contends that permitting him to argue undue influence on appeal (thereby shifting the burden to the appellees to prove that the transactions were proper) is appropriate because the questions of mental capacity and undue influence are so closely related.

[¶ 17] With the exception of certain jurisdictional or fundamental issues, we will not consider issues raised for the first time on appeal. *Meima v. Broemmel*, 2005 WY 87, ¶ 56, 117 P.3d 429, 447 (Wyo.2005). Because the claim of undue influence was not raised below, the appellees had no opportunity to address that question. If the burden of proving the validity of the transactions shifts to the appellees, as appellant urges, signifi-

cant due process issues would arise as the appellees were not given the opportunity to present arguments and evidence to meet that burden. Furthermore, it is questionable whether the appellant would have a legitimate claim for undue influence under the facts presented in the record. Because we do not find it to be a jurisdictional or fundamental issue, we will not address the appellant's undue influence claim on appeal.

### 4. Were the district court's factual findings clearly erroneous?

[¶ 18] The appellant's burden at trial was to show, by a preponderance of the evidence, that at the time he entered into the transactions in question, he was not mentally competent to do so. The district court found that he failed to satisfy that burden. On appeal, the appellant must demonstrate that the district court's findings are unsupported by the record. To that end, the appellant points to a number of areas where he contends that the evidence did not support the district court's decision.

[¶ 19] First, the appellant asserts that the only evidence the appellees presented regarding the appellant's state of mind when he made the conveyances was the testimony of his son William, who testified that the appellant was doing "very well." The appellant next claims that the appellees presented no medical evidence bearing on the question of the appellant's competence. Finally, the appellant points to the testimony of his expert, who expressed the opinion that the appellant suffered severe cognitive impairment from November 21, 2004 to January 7, 2005, and it was highly unlikely the appellant could form the mental capacity necessary to convey property.

[¶ 20] Our review of the record reveals that the evidence was more than sufficient to support the district court's decision. While the appellant claims that the appellees presented inadequate evidence to demonstrate he was mentally competent, we find the opposite to be true. The appellant, who had the burden, presented no compelling evidence demonstrating that he lacked capacity. The only evidence he provided bearing on the relevant time frame (when the documents

were executed) was his own testimony that he did not remember executing any of the documents and the testimony of his daughter, Debra. The appellant's testimony is of very little, if any, value as it gives no insight into his state of mind when the documents were executed. He simply says he does not remember. Although Debra insists that the appellant was not mentally competent when he executed the documents, her testimony is contradictory and, like the testimony of the other sibling, appears to have been largely disregarded by the district court.[2] Although Debra was present when a number of the transactions occurred, she raised no concerns regarding the appellant's mental competence or understanding. See generally Cundick, 383 F.2d at 159 (court upheld validity of contract where, although wife later claimed her husband was mentally incapable of entering into the transactions, she was present when the contracts were executed and never objected). Also, Debra testified at trial that she agreed that from the time he was admitted to the hospice, the appellant was aware of people, read newspapers, watched television, carried on conversations and was generally oriented to person, place and time. The appellant's granddaughter, April Bender, also testified for the appellant. She said that she visited the appellant often and "[h]e was with it sometimes and other times he wasn't." However, Ms. Bender was not present when any of the documents were executed and thus her testimony is also of limited significance.

[¶ 21] In contrast, the appellees presented the testimony of witnesses who were actually present and observed the appellant when the documents were executed. In addition to the testimony of his children who were present and testified that the appellant was of sound mind, the appellees called the individuals who notarized the documents, Karen Harrison and Tera Gillett. Ms. Harrison, an employee at the hospice, notarized the January 7 deeds. Ms. Gillett, a social worker at the hospice, notarized the December 27 bill of sale. While neither specifically recalled notarizing the documents, they verified their signatures and testified that before notarizing any document they would ask questions to verify that the person signing was aware of what he was signing and understood what it meant.

[¶ 22] The medical records offered by the appellees also provide compelling evidence that the appellant was mentally competent at the time he entered into the transactions. The nursing flow sheets indicate that the appellant was alert and oriented to person, time and place on the days in question. While the appellant acknowledges these records, he claims that the charting "defies common sense in view of the nature and extent of Appellant's illness, casts doubt on the reliability of the record." This claim is presumably based largely on the opinion of the appellant's expert witness, whose opinion we will now examine.

[¶ 23] The appellant's expert, Bruce Kahn, M.D., J.D., was not the appellant's treating physician but was hired by the appellant to give an opinion on the matter. Dr. Kahn testified that as a result of a severe hypoxic episode which resulted in brain damage and delirium, the appellant did not have the requisite mental capacity to execute the documents. With regard to Dr. Kahn's opinion, the district court found as follows:

However, Dr. Kahn's testimony and his review was based upon facts that, frankly, are not supported in the record. He testified as to hypoxic events that are not documented. And I went through carefully the medical records and the nurse progress notes to note the oxygen—the $O_2$ levels at various times—and that was an issue that was addressed by counsel during the testimony of [the appellant's treating physician], as well as Dr. Kahn—and there are no indications of any significant hypoxic

2. With regard to the testimony of the children, the district court said:

There was testimony by all the children,—with the exception of Mr. Clyde Street—as well as the son-in-law, Mr. Menke, regarding their observations of Mr. Lewen Street while he was hospitalized during this period of time.

I have discounted that testimony a great deal. And the reason why I've discounted that testimony is because, frankly, both sides want to maintain their property that was given to them by their father.

events that would have resulted in incapacitation that would have prevented Mr. Street from being competent on the dates in question.

We have said:

The trier of fact must decide what weight is to be given to expert testimony, and it still remains the duty of the trier of the factual issues, whether jury or judge, to determine the credibility of all witnesses, including expert witnesses, and to evaluate the testimony of each in reaching its verdict.

*Reed v. Hunter*, 663 P.2d 513, 518 (Wyo. 1983). Further, "[t]he trial judge who heard and saw the witnesses and felt the pulse beat of the lawsuit is, to be sure, the first and best judge of the weight and value to be given to all of the evidence, both expert and non-expert." *Cundick*, 383 F.2d at 162.

[¶ 24] Our review of the medical records reveals no evidence of the severe "hypoxic events" described by Dr. Kahn during the relevant time periods. Even Dr. Kahn acknowledged a lack of evidence in the medical records:

Q. Okay. Did you see reference in the medical records that you reviewed to the extent or severity of [the appellant's] hypoxemia?

A. You know, I scoured the records very thoroughly and could not see a blood gas where his oxygen level would have been consistent with that diagnosis.

The testimony and opinion of Dr. Kahn, upon which the appellant relies almost exclusively, fell short of satisfying his burden at trial to show by a preponderance of the evidence that he was mentally incompetent to enter into the transactions. Likewise, when Dr. Kahn's opinion is viewed in conjunction with all of the evidence in the record on appeal, we cannot say with a definite and firm conviction that a mistake was made.

## CONCLUSION

[¶ 25] We find that the district court applied the proper standards when determining whether the appellant had the requisite mental capacity to enter into the transactions at issue here. We will not consider the appel-

lant's claim of undue influence, as that issue is raised for the first time on appeal. Finally, after reviewing the record and considering the facts in light of our articulated standard of review, we find that the district court's factual findings are not clearly erroneous. We affirm the district court's decision.