2011 WY 145

**Mark ORCHARD, Appellant (Plaintiff),**

v.

**The STATE of Wyoming, DEPARTMENT OF TRANSPORTATION, Appellee (Defendant).**

No. S–11–0084.

Supreme Court of Wyoming.

Oct. 20, 2011.

Representing Appellant: R. Michael Vang, Fleener & Vang, LLC, Laramie, Wyoming.

Representing Appellee: Gregory A. Phillips, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; Michael T. Kahler, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Appellant, Mark Orchard, was arrested for driving while under the influence of alcohol.  As a result, the Wyoming Department of Transportation advised him that it was suspending his driver's license pursuant to Wyo. Stat. Ann. § 31-6-102.  Appellant contested the suspension before the Office of Administrative Hearings (OAH), and the OAH upheld the suspension.  He sought review in the district court, and the court affirmed the OAH's order.  Appellant challenges the district court's order, contending that the police officer who arrested him lacked reasonable suspicion to initiate the traffic stop.  We affirm.

### ISSUE

[¶ 2]   Appellant presents the following issue:

1.  The only issue presented for appeal is whether or not the arresting officer presented sufficient facts within his Officer's Signed Statement and certified record to support his claim that he received an anonymous REDDI report and observed sufficient facts while on routine traffic patrol that would allow the arresting officer to make contact with the Licensee and ultimately arrest him for "driving while under the influence of alcohol" (DWUI).

The Wyoming Department of Transportation (WYDOT) phrases the issues as follows:

1.  Did the OAH correctly conclude that [the arresting officer] had reasonable suspicion to initiate a traffic stop on Appellant?

2.  Did the OAH correctly conclude that [the arresting officer] had probable cause to arrest Appellant for driving while under the influence of alcohol?

### FACTS

[¶ 3]   On December 17, 2009, an officer of the Baggs Police Department received a Report Every Drunk Driver Immediately (REDDI) alert involving a purple Dodge pickup traveling north from Cowpoke Lane

in Baggs, Wyoming. A short time later, the officer passed a vehicle with the same description driving south through town. According to the officer's narrative report, as he was passing the pickup he observed the vehicle cross the double yellow centerline. The officer turned around to follow and noticed that the driver failed to use a turn signal when turning right into a gas station. The officer activated his emergency lights and initiated a traffic stop.

[¶ 4] As the officer exited his patrol car, Appellant left the pickup and walked toward the officer. Appellant exhibited poor balance and had difficulty walking. Upon making contact with Appellant, the officer detected a strong odor of alcohol on his breath. Appellant stated that he had been drinking at a local establishment. The officer requested that Appellant perform field sobriety maneuvers, including the horizontal gaze nystagmus, one leg stand, and walk and turn tests. Appellant stated that he would not be able to pass, but agreed to perform the tests. The officer's report indicated that, during the horizontal gaze nystagmus test, Appellant lacked smooth pursuit in both eyes and sustained distinct nystagmus at maximum deviation. Appellant was unable to complete the other tests. The officer then asked Appellant to submit to a preliminary breath test, which he refused. Based on the officer's observations during the traffic stop and Appellant's performance on the field sobriety tests, the officer placed him under arrest for driving while under the influence of alcohol. A breath test was subsequently administered at the Carbon County jail, which showed that Appellant had a .135% blood alcohol content.

[¶ 5] WYDOT notified Appellant of its intent to suspend his driver's license for driving while under the influence, as required by Wyo. Stat. Ann. § 31-6-102. Appellant requested a contested case hearing, and a hearing was held on March 4, 2010. Appellant appeared via telephone and the Department relied on its certified record, which included the arresting officer's narrative report. Appellant contested the officer's version of the events, arguing that the officer had not made contact with him until three to five minutes after he had parked his vehicle to get gas.

Appellant presented three video recordings of the arrest, two of which were taken from the arresting officer's dashboard camera, and another that was taken from an assisting officer's camera. He noted that none of the recordings actually showed him driving or showed the officer's initial contact with him.

[¶ 6] Each of the videos of the incident appears to have been taken after Appellant was stopped at the gas station. The first video was taken from a moveable camera that was initially inside the arresting officer's vehicle. The hearing examiner noted that the video was "not very helpful because the camera was continuously moving around, as if [the arresting officer] believed it was not activated." The hearing examiner also noted that, in the video, Appellant "repeatedly asked if he could be given a break and repeatedly stated that he had too much to drink and would not be able to do the field sobriety maneuvers." The second video, which was taken from inside of the arresting officer's vehicle, showed Appellant during transport to the detention facility after his arrest. In this video, Appellant asked the arresting officer why he was stopped, and the officer told Appellant that he stopped him for drifting over the centerline and for failing to use his turn signal when turning into the gas station. The third video was taken from the assisting officer's vehicle, which arrived on the scene after the stop.

[¶ 7] Appellant also presented testimony of a witness who stated that she observed the arresting officer receive the REDDI alert at a restaurant in Baggs, and that she subsequently observed the officer's vehicle with its overhead lights illuminated and Appellant's pickup parked at the gas station. Appellant argued that this testimony indicated that the officer had not observed him driving his vehicle. Finally, Appellant noted that both the time of the incident and the time it was reported were listed as 8:48 p.m. on the arresting officer's case report. Based on this evidence, Appellant asserted that the Department did not prove that the arresting officer had reasonable suspicion to make a traffic stop because the officer had lied about observing Appellant crossing the double yellow

centerline and about observing Appellant failing to use his turn signal.

[¶ 8] The hearing examiner found the officer's statements to be more credible than Appellant's version of the events and explained:

14. This Office disagrees with counsel for Orchard. The alleged inconsistencies in the timing of the REDDI Report and [the arresting officer's] contact with Orchard are not sufficient to refute [the arresting officer's] sworn statements regarding his observation of traffic violations. In addition, Orchard's testimony was less credible than [the arresting officer's] more contemporaneous written report due to Orchard's undisputed intoxication and [the witness's] testimony did not have any bearing on what occurred while [the arresting officer] was driving past Orchard just prior to stopping Orchard because she was still in the restaurant. Finally, Orchard did not subpoena [the arresting officer] and did not properly challenge his sworn statements.

The hearing examiner ultimately determined that the arresting officer had reasonable suspicion to initiate the traffic stop because he "properly corroborated the REDDI Report by observing driving indicative of impairment and observed Orchard commit two traffic infractions, crossing over the double yellow centerline and failing to use a turn signal while turning into the Conoco station parking lot." [1]

[¶ 9] The district court upheld the hearing examiner's decision, finding "no reason to reverse the conclusions of the Office of Administrative Hearings in determining that, based on the facts as found by the Hearing Officer, [the arresting officer] had reasonable suspicion to initiate a traffic stop of Mr. Orchard." Appellant subsequently filed this timely appeal.

## STANDARD OF REVIEW

[¶ 10] When we consider an appeal from a district court's review of an administrative agency's decision, we review the case as if it had come directly from the administrative agency. *Batten v. Wyo. DOT Drivers' License Div.*, 2007 WY 173, ¶ 6, 170 P.3d 1236, 1239 (Wyo.2007). Review of an administrative agency's action is governed by the Wyoming Administrative Procedure Act, which provides that the reviewing court shall:

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009). We apply the substantial evidence standard of review to the hearing examiner's findings of fact. *Batten*, ¶ 12, 170 P.3d at 1241.

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. [*Bradshaw v. Wyo. Dep't of Transp. Drivers' License Div.*, 2006 WY 70, ¶ 11, 135 P.3d 612, 616 (Wyo.2006).] Phrased another way, "[f]indings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can conclude a reasonable mind might accept the evidence as adequate to support the agency findings." *Id.*

*Id.*, ¶ 7, 170 P.3d at 1240. We review the agency's conclusions of law *de novo*. *Id.*

## DISCUSSION

[¶ 11] The Fourth Amendment to the United States Constitution protects per-

---

1. Although the hearing examiner concluded that the arresting officer had "reasonable suspicion" to initiate the stop, we note that the decision to stop a motorist may also be based on probable cause. *See infra*, ¶¶ 11–12.

sons from unreasonable searches and seizures. A routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo.2003). The decision to stop an automobile is justified when the officer has probable cause to believe a traffic violation has occurred or when the officer has a reasonable articulable suspicion that the particular motorist is engaged in criminal activity. *Harvey v. State*, 2011 WY 72, ¶ 9, 250 P.3d 167, 171 (Wyo.2011); *Frazier v. State*, 2010 WY 107, ¶ 16, 236 P.3d 295, 300 (Wyo.2010). An officer's personal observation of a traffic violation provides probable cause to initiate a stop. *Tiernan v. State*, 2011 WY 143, ¶ 12, 262 P.3d 561, 565 (Wyo. 2011); *Fertig v. State*, 2006 WY 148, ¶ 27, 146 P.3d 492, 501 (Wyo.2006).

[¶ 12] An investigatory stop may be justified by reasonable suspicion where a police officer is "able to point to specific and articulable facts which, taken together with rational inferences [drawn] from those facts, reasonably warrant that intrusion." *McChesney v. State*, 988 P.2d 1071, 1075 (Wyo.1999). We have said that

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), that must be taken into account when evaluating whether there is reasonable suspicion.

*Id.*, 988 P.2d at 1075 (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990)). In cases where reasonable suspicion originates from an anonymous informant's tip to the police, we have held that the tip may provide reasonable suspicion for an investigatory stop if it carries sufficient "indicia of reliability."

*McChesney*, 988 P.2d at 1076. Where an anonymous informant makes no prediction of future behavior indicating "a special familiarity with the respondent's affairs," the investigating officer is required to corroborate the tip in some other fashion, usually by observing either a traffic violation or driving indicative of impairment. *Id.* (citing *Alabama v. White*, 496 U.S. at 332, 110 S.Ct. at 2417).

[¶ 13] In the present case, the arresting officer's narrative stated that, as he passed a vehicle matching the description in the REDDI report, he "noticed that the vehicle drifted over the double yellow centerline on Hwy 789." The officer further stated that he "turned around to follow the vehicle, and I then noticed that they did not activate their blinker when turning right into Sheppard's Conoco."[2] The officer activated his emergency overhead lights and initiated a traffic stop of Appellant's vehicle.

[¶ 14] Appellant does not dispute that the officer's observations, as presented in his narrative report, provide sufficient justification for a stop. He contends, however, that the officer did not see Appellant driving his vehicle. He argues that the video recordings of the traffic stop and the witness testimony indicate that "the officer never saw a traffic violation and simply approached [Appellant] as he was gassing up his car for the next morning and his car happened to match a REDDI report." Appellant's argument presents a question of fact. Accordingly, we determine whether substantial evidence exists to support the hearing examiner's findings.

[¶ 15] The hearing examiner determined that the alleged inconsistencies in the arresting officer's statement were not sufficient to disprove the State's prima facie case. The hearing examiner explained that decision as follows:

> First, [the arresting officer] was not subpoenaed to testify at hearing and the burden of challenging the veracity or validity

---

2. In his report, the officer did not indicate which statutes Appellant may have violated. However, the officer's observations suggest violations of Wyo. Stat. Ann. § 31–5–207, governing "No-passing zones," § 31–5–209, titled "Driving on roadways laned for traffic," and § 31–5–217, governing "Turning movements and required signals." In any event, Appellant does not dispute that crossing the centerline and failing to use a turn signal are traffic violations.

of an officer's testimony or sworn statements rests squarely on the driver. [*Department of Revenue and Taxation v.*] *Hull,* 751 P.2d [351,] 356 [ (Wyo.1988) ]. An officer must be properly subpoenaed to testify when the decision is made to challenge such statements. *Id.* In general, when the driver fails to properly challenge the officer's statements, this Office will not reject the officer's statements or their presumption of validity as provided by statute, rules and regulations. Second, [the arresting officer's] sworn statements in his Narrative were more credible than Orchard's testimony because [the arresting officer's] statements were made more contemporaneously and Orchard's testimony was based upon his memory from an evening when he was admittedly intoxicated. Third, the alleged inconsistency in the time of the REDDI Report to the Carbon County Sheriff's Department and [the arresting officer's] time of initial contact with Orchard was not sufficient to demonstrate [the arresting officer] fabricated his sworn Narrative, especially in light of the failure to call [the arresting officer] or the dispatcher from the Sheriff's Department as witnesses to attempt to explain the alleged inconsistency. Fourth, [the witness's] testimony did not have any bearing on what occurred while [the arresting officer] was driving past Orchard just prior to stopping Orchard because she was still in the restaurant at the time. Finally, although the videos were of poor quality and not very professionally made, the videos were consistent with [the arresting officer's] Narrative. In fact, during the second video, [the arresting officer] told Orchard he stopped him for drifting over the centerline and for failing to use his turn signal when he turned into the Conoco station, which corroborated [the arresting officer's] Signed Statement and Narrative.

In sum, the hearing examiner considered the evidence presented by Appellant, weighed the credibility of the witnesses, and concluded that the arresting officer had, in fact, observed Appellant in his vehicle before initiating a traffic stop.

[¶ 16] We conclude that the hearing examiner's findings are supported by substantial evidence, and that those findings support a determination that the stop of Appellant's vehicle was reasonable under either a reasonable suspicion or probable cause analysis. As noted above, an observed violation of a traffic law, by itself, provides an officer with probable cause to initiate a traffic stop. Observation of traffic violations may also provide sufficient corroboration of a REDDI report to justify an intrusion based on reasonable suspicion that a motorist is driving while under the influence. The arresting officer's signed statement indicated that he observed Appellant commit two traffic violations, and the statement was supported by the videos presented at the contested case hearing. In one of the recordings, Appellant can be heard asking the officer why he was stopped. This statement indicates that Appellant was indeed "stopped" by the officer, and it appears to contradict Appellant's claim that he had been parked at the gas station for three to five minutes before being approached by the officer. Further, in response to Appellant's inquiry as to why he was stopped, the officer stated that he stopped him for drifting over the centerline and failing to use his turn signal.

[¶ 17] In addition, the testimony from the witness who was present when the arresting officer received the REDDI alert does not contradict any material fact set forth in the arresting officer's narrative. Although the witness's statements may create a dispute as to whether the officer received the report while he was "on routine patrol," this alleged inconsistency in the officer's narrative does not negate the possibility that the officer observed Appellant between the time that the officer left the restaurant and stopped Appellant at the gas station.

[¶ 18] Having reviewed the entire record, we find no reason to depart from our usual deference to a lower tribunal's credibility determinations. *See, e.g., Hittner v. State ex rel. Wyo. DOT (In re Hittner* ), 2008 WY 91, ¶ 16, 189 P.3d 872, 877 (Wyo.2008). As we have repeatedly stated, "Our job is not to reweigh the evidence or determine credibility of witnesses. That is the responsibility of the finder of fact." *Batten,* ¶ 20, 170 P.3d at

1243. The Department of Transportation's certified record, which included the arresting officer's signed statement, constitutes relevant evidence that a reasonable mind might accept as adequate to support the determination that the arresting officer had probable cause or reasonable suspicion to initiate a traffic stop of Appellant's vehicle.

[¶ 19] Finally, Appellant contends that the arresting officer did not have probable cause to make an arrest. Appellant, however, did not raise this issue in the proceedings before the OAH. We recently reiterated that, "With the exception of certain jurisdictional or fundamental issues, we will not consider issues raised for the first time on appeal." *Street v. Street*, 2009 WY 85, ¶ 17, 211 P.3d 495, 501 (Wyo.2009). We have held that "This rule is equally applicable to appeals from administrative decisions as to those from district courts." *BP Am. Prod. Co. v. Dep't of Revenue*, 2006 WY 27, ¶ 18, 130 P.3d 438, 462 (Wyo.2006). Appellant has made no argument and has offered no authority indicating that he presents a "jurisdictional" or "fundamental" issue. Consequently, we do not address the issue of whether the officer had probable cause to arrest Appellant.

[¶ 20] Affirmed.